**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| TRAVIS ADKINS, | |
| *Plaintiff*, | |
| v. | |
| THE DAILY WIRE, LLC, | No. 1:25-cv-4399 |
| LUKE ROSIAK, and | |
| JASMINE BATTLE, | |
| *Defendants*. | |

**PLAINTIFF TRAVIS ADKINS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO MOTION TO BIFURCATE RULE 12 MOTIONS**

Plaintiff Travis Adkins opposes The Daily Wire and Luke Rosiak's ("The Daily Wire Defendants") motion to bifurcate their contemplated Rule 12 and transfer motions. The Federal Rules provide a straightforward, efficient, and fair mechanism for presenting available Rule 12 defenses together. There is no sound reason to depart from it here.

Jurisdiction and venue are proper in this Court, and dividing The Daily Wire Defendants' forthcoming Rule 12 motions will only delay and undermine an efficient and judicious adjudication of this case. The motion to bifurcate should therefore be denied.

**FACTUAL BACKGROUND**

Mr. Adkins is a decorated public servant with decades of experience in international development and foreign affairs who has worked and lived in Washington, DC for the better part of the last decade, including while serving as President and CEO of the United States African

1

Development Foundation from January 2022 until February 2025.  (Am. Compl. ¶ 11 (Dkt. 9).)[1]

At every stage of his career, Mr. Adkins has opposed graft, corruption, and lawlessness, while

striving to model ethical and dedicated service.  (*Id.* ¶ 4.)  Yet The Daily Wire Defendants falsely

portrayed him as an unvetted political appointee who never applied for his DC position, a serial

embezzler who misused agency funds in DC for luxury expenses, and a bigot who refused to hire

non-Black people and veterans for the DC-based agency he led.  (*See, e.g.*, *id.* ¶ 5.)

The reporting giving rise to this action focused entirely on activities in DC and relied

extensively on sources living and working in DC.  (*Id.* ¶ 13.)  The Daily Wire focuses much of its

reporting on the DC landscape, and the publications at the center of this lawsuit concerned people,

activities, and events in DC.  (*Id.* ¶ 12.)  Moreover, The Daily Wire Defendants hold out Defendant

Rosiak as The Daily Wire's DC-based reporter on his The Daily Wire-affiliated social media

accounts.  Defendant Jasmine Battle,[2] a source quoted in the articles, worked in DC during the

events at issue and continues to work there.  (*Id.* ¶ 14.)  Mr. Adkins further alleges that Defendants

caused tortious injury in DC to a DC resident through acts and omissions occurring in DC.  (*Id.* ¶

17.)

### ARGUMENT

**I.      The express language of Rule 12 contemplates consolidated motions to dismiss.**

Federal Rule of Civil Procedure 12 establishes how a party responding to a complaint must

present its defenses.  It provides that "a party that makes a motion under [Rule 12] must not make

---

[1] This memorandum relies on the factual allegations in Mr. Adkins' First Amended Complaint. (Dkt. 9.)  While the present motion presents only the discrete procedural issue of bifurcation, the motion involves venue arguments and courts "accept[] the plaintiff's well-pleaded allegations regarding venue as true and draw[] reasonable inferences from those allegations in favor of the plaintiff."  *Witchard v. Surampudi*, No. 24-cv-00296, 22025 WL 928708, at *2 (D.D.C. Mar. 27, 2025) (citing *Abraham v. Burwell*, 110 F. Supp. 3d 25, 28 (D.D.C. 2015)).
[2] Defendant Battle supports The Daily Wire Defendants' bifurcation motion.

another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). As the DC Circuit has explained, "a party choosing to file a Rule 12(b) motion 'must include all defenses and objections then available to him that Rule 12 permits to be made by motion.'" *Simpkins v. District of Columbia*, 108 F.3d 366, 368 (D.C. Cir. 1997) (quoting Charles Alan Wright, *The Law of Federal Courts* 434−35 (4th ed. 1983)).

The defenses of improper venue under Rule 12(b)(3) and failure to state a claim under Rule 12(b)(6) are both expressly enumerated. Both are available now. Under the ordinary operation of Rule 12 they must be presented simultaneously. The Daily Wire Defendants ask the Court to depart from that framework. But Rule 12 reflects a deliberate policy against piecemeal motion practice. While courts are invested with the discretion to maintain their docket and deviate from this procedure, The Daily Wire Defendants have not articulated a sound basis for doing so here. The plain language of Rule 12 provides sufficient reason to deny the present motion.

## II.    The Daily Wire Defendants' preview of their venue arguments demonstrates there is no reason to deviate from the standard procedure under Rule 12.

The Daily Wire Defendants argue for bifurcation by characterizing their forthcoming Rule 12(b)(3) motion as "relatively simple" and likely dispositive. (Mem. of Points and Authorities 1 ("Defs.' Mem.") (Dkt. 17).) Their own preview of what they assert are the facts at issue for determining venue demonstrates otherwise on both counts. By The Daily Wire Defendants' own description, their anticipated venue arguments rely on ignoring significant factual allegations tying this case to the District and are not well grounded in applicable precedent. But as The Daily Wire Defendants acknowledge, venue is highly connected to the overall question of whether Mr. Adkins has sufficiently pleaded factual allegations to sustain this matter in this District—precisely the type

3

of defenses Rule 12 contemplates being raised alongside each other, not segmented into serial motion practice or litigated in isolation.

> **A.** **Mr. Adkins has pleaded substantial events giving rise to his claims in this District.**

The Amended Complaint alleges that "a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia."  (Am. Compl. ¶ 18.)  For instance:

- Defendant Rosiak focused a significant portion of his reporting on developments in the District and relied extensively on sources living and working here.  (*Id.* ¶¶ 12−13.)

- Defendant Battle, one of The Daily Wire Defendants' sources, worked in DC during the relevant events and served as a source for the articles.  (*Id.* ¶ 14.)

- The reporting giving rise to this action focused entirely on activities in DC.  (*Id.* ¶ 13.)

- The alleged injuries arising from Defendants' actions occurred in this District, both because that is where Mr. Adkins' career is centered and the reputational harm he has suffered relates to personal and professional contacts in this District.  (*Id.* ¶¶ 19−35.)

- Defendants caused tortious injury in this District by acts and omissions occurring here, including hiring, engaging, and using a reporter who specializes in reporting in DC, who reported and conducted his investigation here.  (*Id.* ¶ 17.)

At this stage, these factual allegations are accepted as true. And they plainly satisfy the standard for establishing venue: that a "substantial part" of the events or omissions occurred in this District. 28 U.S.C. § 1391(b)(2).  Whether Defendants ultimately contest those facts does not transform the venue issue into a significant threshold issue suitable for consideration in isolation.

> **B.** **Venue in defamation cases is not limited to the place of publication.**

The Daily Wire Defendants preview a venue argument centered on "publication from Tennessee," where The Daily Wire has its principal place of business.  (Defs.' Mem. 3.)  That argument fails for a few reasons.  First, in defamation cases, "publication" occurs wherever the offending material is circulated, not just where the publisher has its principal place of business. *See Walden v. Fiore*, 571 U.S. 277, 287-88 (2014) (citing *Keeton v. Hustler Magazine, Inc.*, 465

U.S. 770, 777 (1984).)  The Daily Wire Defendants are wrong, therefore, in contending that Tennessee is the sole (or even primary) place of publication for purposes of this action.

Second, the location of publication does not control the question of venue, as courts in this District have repeatedly held.  *See Blumenthal v. Drudge*, 992 F. Supp. 44, 53–54 (D.D.C. 1998). For instance, The Daily Wire Defendants argue that venue in defamation actions requires that "a substantial portion of the facts giving rise to a defamation action occurred in the district in which the alleged defamation was disseminated." (Defs.' Mem. 3−4 (quoting *Smartmatic USA Corp. v. Herring Networks, Inc.*, 610 F. Supp. 3d 92, 100 (D.D.C. 2022).)  But the *Smartmatic* decision on which they rely concluded that this District was an appropriate venue based on analogous facts. In *Smartmatic*, the plaintiff—a Florida-based company incorporated in Delaware—alleged that the defendant (San Diego-based OAN) had made "statements about Smartmatic in nationwide broadcasts and publications that reached D.C. residents." *Id.* at 95 (quotation omitted).  The questions of jurisdiction and venue thus turned on nationwide reporting that touched on events in the District and reached residents here.  Defendants argued that venue in this District was improper "because the *most* substantial parts of the claims did not occur here." *Id.* at 100 (emphasis added). But the court rejected that argument, holding instead that where the "most" substantial parts of the claims occurred is irrelevant and that "proper venue requires *just* that 'a substantial part' of the claims occurred in the District." *Id.* (emphasis added) (quoting 28 U.S.C. § 1391(b)(2)); *see also id.* ("Courts have repeatedly explained that even if a substantial part of the events in a case took place in one district, a plaintiff may still file suit in another district if a substantial part of the events also took place there.").

Defendants' nascent venue arguments collapse the venue analysis into the location of a corporate headquarters alone and ignore the statutory inquiry that courts here have "repeatedly

explained": whether "a substantial part of the events or omissions giving rise to the claim occurred" in the District. 28 U.S.C. § 1391(b)(2); *see also Blumenthal*, 992 F. Supp. at 52–55. On the face of the Amended Complaint, that standard is satisfied here. While the substance of The Daily Wire Defendants' venue arguments is not directly in front of the Court, the facial weakness of the argument can and should be a consideration in whether to depart from the procedural standards under Rule 12 and allow bifurcated motions to dismiss.

### III.    Judicial economy favors considering all Rule 12 defenses at one time.

Aside from the merits of their forthcoming venue arguments, The Daily Wire Defendants frame their present request for bifurcation as a measure designed to promote judicial economy. (*See* Defs.' Mem. 4–6.) It is not. It would multiply proceedings and introduce delay.

#### A.    Serial Rule 12 motions create delay.

Granting the present motion would necessarily cause delay because bifurcation guarantees two rounds of dispositive motion practice. First, the parties would fully brief a Rule 12(b)(3) motion. If the Court denies that motion—as the allegations support (Am. Compl. ¶¶ 17–18)—the parties would then brief an entirely separate Rule 12(b)(6) motion. And if the Court grants that motion, the parties would *still* have to brief and argue a Rule 12(b)(6) motion in a different venue. That means no matter the outcome of the venue issue, The Daily Wire Defendants propose two rounds of briefing, two rounds of judicial review, and potentially two hearings.

Nothing about that sequence conserves resources. To the contrary, it guarantees delay. Nor would sequencing motions in this fashion narrow or simplify the second round of briefing; Defendants acknowledge that their anticipated Rule 12(b)(6) motion will involve a detailed choice-of-law analysis and extensive arguments on substantial truth, opinion, actual malice, and privilege.

(Defs.' Mem. 1.)  Resolving venue first does not eliminate that work, it only postpones it.  *See infra* Pt. IV.

The Daily Wire Defendants argue that any resulting delay would be "minimal," and note that Mr. Adkins previously agreed to certain procedural accommodations, including waiving service.  (*Id.* at 6.)  But such delay would not be minimal—indeed, motion practice simply to determine whether the motions can be bifurcated has already caused delays to any adjudication on the merits, and allowing for multiple rounds of briefing, followed by tiered rulings, will necessarily result in months of delay.  Nor should professional comity between counsel be converted into a justification for serial motion practice.  Mr. Adkins' willingness to streamline service or avoid unnecessary disputes should not now prejudice his right to proceed expeditiously by justifying deviation from Rule 12 and multiplying dispositive motions.

Moreover, delay itself is not neutral.  The Amended Complaint alleges ongoing reputational harm stemming from widely disseminated publications—including a republication more than a week after Mr. Adkins first filed this lawsuit and notified the Defendants of it.  (Am. Compl. ¶¶ 7–8.)  Prolonging resolution of threshold defenses compounds that harm without advancing any meaningful efficiency.

**B.    This Court has previously demonstrated how full briefing on all Rule 12 arguments simultaneously furthers judicial economy.**

Courts in this District routinely receive Rule 12 motions addressing multiple defenses. *E.g.*, *Barth v. Mabry Carlton Ranch Inc.*, No. 25-cv-1136, 2026 WL 136905 (D.D.C. Jan. 18, 2026) (addressing dismissal under Rule 12(b)(1), (3) & (6)); *Witchard v. Surampudi*, No. 24-cv-00296, 2025 WL 928708 (D.D.C. Mar. 27, 2025) (same); *Burroughs v. Noem*, No. 23-cv-3271, 2025 WL 561285 (D.D.C. Feb. 20, 2025) (addressing dismissal under Rule 12(b)(3) & (6)).  And that includes instances presenting complex arguments from multiple defendants.  *E.g.*, *Black Lives*

7

*Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 27 (D.D.C. 2021) (addressing arguments for dismissal under Rule 12(b)(1), (3) & (6) that were raised in "15 motions to dismiss filed by the defendants—including the former President, the former Attorney General, officials in the U.S. Park Police, DC National Guard, U.S. Secret Service, and the Federal Bureau of Prisons, the Arlington County Police Department, and the District of Columbia MPD; and sued in their official capacity, the Secretary of Defense, the Chief of the U.S. Park Police, the Director of the U.S. Secret Service, the Commanding General of the DC Natural Guard, and the Director of the Federal Bureau of Prisons").

The Daily Wire Defendants point only to non-binding decisions from other jurisdictions where courts have allowed defendants to raise Rule 12 defenses in serial fashion. (Defs.' Mem. 4−5 (collecting cases).) But each case they cite involves special circumstances not present here.

In *Real v. Yuga Labs, Inc.*, the court identified a statutory interpretation question that not only governed the applicability of the relevant statute but also controlled state law claims and other aspects of the case. No. CV 22-8809, 2025 WL 3437389, at *3 (C.D. Cal. Sept. 30, 2025). The court ordered briefing on that limited question of statutory interpretation. *Id.* And in *Jackson v. Whitepages, Inc.*, the plaintiff sued multiple defendants in five different class actions in West Virginia state court, which were subsequently removed to federal court and consolidated. 798 F. Supp. 3d 583, 587 (N.D.W. Va. 2025). The defendants all advised the court that they intended to challenge the constitutionality of the statute under which the plaintiff was suing. *Id.* at 591. Whereas the constitutionality of the statute was a threshold issue for each defendant, myriad other bases and arguments for dismissal existed that diverged. By first hearing defendants' argument on constitutionality, the court significantly streamlined the proceedings. *Id.* Likewise in *Pilchman v. NLRB*, the court focused briefing on a question of subject matter jurisdiction that ended up

resolving the matter entirely.  No. 14-cv-7083, 2017 WL 1750300, at \*4 (E.D.N.Y. May 3, 2017).  And in *The Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, early settlement discussions with the court allowed the court and the parties to have mutually "identified four disputed threshold issues that impact the parties' respective settlement positions."  No. 13-cv-9239, 2024 WL 4068883, at \*1 (S.D.N.Y. Sept. 5, 2024).  By allowing bifurcated briefing on the issues that stood in the way of a possible early settlement, the court was exercising its discretion to potentially greatly limit the burdens of litigation.

As this Court has recognized, "revers[ing] the normal order of considering personal jurisdiction and venue" is rare and only appropriate when compelling circumstances create "a sound prudential justification for doing so."  *Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petroleum Expl. & Prod. Corp.*, 600 F. Supp. 3d 73, 84 (2022) (internal quotation marks omitted) (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).  In *Uni-Top*, this Court only allowed bifurcated briefing because in that case, proceeding with jurisdictional discovery would have implicated complex and sensitive issues of jurisdiction, international comity, and a foreign sovereign, whereas that case presented a unique circumstance where bifurcation substantially limited the complexity and risk of exploring sensitive issues.  *Id.* at 85.

No such concerns about international jurisdiction and foreign relations are present here where The Daily Wire Defendants seek to present standard Rule 12 defenses.  In fact, nothing The Daily Wire Defendants describe related to venue distinguishes this case from every case where a defendant wishes to raise a venue defense under Rule 12.  By asking the Court to bifurcate consideration of Rule 12 defenses, The Daily Wire Defendants urge this Court to adopt a standard that would make two rounds of Rule 12 briefing the default in any matter where any defendant

wishes to raise multiple defenses.  In short, bifurcation will only serve to multiply the proceedings and cause delay.

**IV.    Defendants' real concern is to game the choice of law.**

The Daily Wire Defendants' motion is framed as a matter of efficiency.  But their own brief reveals a different concern: choice of law.  They argue that venue should be resolved first because it "dictates which state's choice-of-law rules apply" and suggest that Mr. Adkins filed in this District to avoid another state's anti-SLAPP statute.  (Defs.' Mem. 1−2.)  That is a strategic argument, not a prudential one arising from concerns about judicial economy, and it is precisely the sort of piecemeal motion practice Rule 12 is designed to prevent.  The fact that governing law may differ depending on forum does not render venue improper, nor does it justify restructuring Rule 12 motion practice to give Defendants a preliminary forum-selection advantage.  And Defendants are not entitled to a procedural carveout simply because they argue that choice-of-law consequences make venue strategically significant.

In any event, The Daily Wire Defendants are simply wrong.  They claim that resolving the venue question would "moot" any briefing on the choice of law question.  (Defs.' Mem. 5.)  But venue alone does not control choice of law.  *See* Restatement (Second) of Conflict of Laws § 6 (A.L.I. 1971); *cf. Stewart v. Cap. Area Permanente Med. Grp., P.C.*, 720 F. Supp. 3, 4−5 (D.D.C. 1989) (noting that the choice-of-law analysis rests on different considerations than venue).  And, in fact, choice of law itself may affect venue.  *See Ross v. Davis*, 74 F. Supp. 3d 231, 239 (D.D.C. 2014) ("[T]he outcome of a choice-of-law analysis can potentially affect questions of venue.").  This is why the Federal Rules require consolidation of available defenses so that the Court can evaluate the case holistically at the pleading stage.

In short, Defendants' request is not about conserving judicial resources. It is about attempting to secure a preferred forum and governing law before engaging the merits. Rule 12 does not authorize that approach, and the Court should decline to adopt it here.

## CONCLUSION

Rule 12 establishes a straightforward procedure for defendants to raise defenses. That procedure includes the default rule that defendants must raise all defenses in a single motion. Courts recognize that prudential concerns may warrant deviating from this process. But The Daily Wire Defendants present no sound basis that raises any such prudential concern. Because the previewed venue arguments will not resolve Mr. Adkins' claims and because those arguments are weak on their merits, bifurcating Rule 12 briefing will only multiply proceedings and cause undue delay. The Court should deny the present motion.

DATED: March 3, 2026

Respectfully Submitted,

By: */s/ Dustin A. Pusch*
Dustin A. Pusch (D.D.C. Bar No.1015069)
Mark Thomson (D.D.C. Bar No.1048004)
Meier Watkins Phillips Pusch LLP
1120 20th Street, NW, Suite 550
Washington, DC 20036
dustin.pusch@mwpp.com
mark.thomson@mwpp.com

Karianne Jones (D.D.C. Bar No. 1177335)
Brandon Faske (*pro hac vice* forthcoming)
Evergreen Legal Strategies, LLP
1763 Columbia Rd NW, Suite 100
Washington, DC 20009
karianne@evergreenlegalstrategies.com
brandon@evergreenlegalstrategies.com