**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TRAVIS ADKINS,

       Plaintiff,

    v.

THE DAILY WIRE, LLC, LUKE ROSIAK,
and JASMINE BATTLE,

       Defendants.

Civil Action No. 25-4399-DLF

**REPLY IN SUPPORT OF DEFENDANT BATTLE'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................................i

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ................................................................................................................... 1

ARGUMENT........................................................................................................................... 2

I.    PLAINTIFF HAS NOT ESTABLISHED JURISDICTION OVER DEFENDANT
      BATTLE ........................................................................................................................ 2

      A.   Due Process Requires Forum-Directed Conduct by the Defendant............................... 2

      B.   *Calder* Does Not Salvage Plaintiff's Theory ................................................................ 4

      C.   Courts Confronting Analogous Facts Reject Jurisdiction.............................................. 5

      D.   Plaintiff's Request for Jurisdictional Discovery Confirms the Pleading Defect ............ 6

II.   PLAINTIFF HAS NOT PLED FALSITY FOR THE TAILOR'S-BILL OR HOTEL-
      DEMAND STATEMENTS .............................................................................................. 6

      A.   Plaintiff Does Not Meaningfully Challenge the Truth of the Tailor's-Bill Statement ... 7

      B.   Plaintiff Has Not Pled That He Did Not Demand $1,000-Per-Night Hotels.................. 7

      C.   Plaintiff's Contradictory Defamation-by-Implication Theory Fails .............................. 8

III.  STATEMENTS DERIVED FROM DEFENDANT BATTLE'S EEOC AFFIDAVIT
      ARE ABSOLUTELY PRIVILEGED................................................................................ 10

IV.   PLAINTIFF HAS NOT SUFFICIENTLY PLED ACTUAL MALICE........................... 12

      A.   Plaintiff's New Theory Does Not Plead Actual Malice................................................. 13

      B.   Plaintiff's "Conjuring" Theory Is Belied by His Pleading and the Public Record....... 15

      C.   Plaintiff's Reliance on Battle's Silence Confirms the Pleading Defect........................ 16

V.    PLAINTIFF HAS NOT PLED ACTIONABLE INJURY ATTRIBUTABLE TO
      DEFENDANT BATTLE .................................................................................................. 16

A.    The Causation Problem Cannot Be Cured by Aggregating Harm Across Defendants. 17

B.    Pre-Existing Authoritative Sources Sever the Causal Chain ........................................ 18

C.    Per Se Designation Does Not Substitute for Causation ................................................ 19

CONCLUSION .......................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

991 F.3d 231, 243 (D.C. Cir. 2021) .................................................................................. 17

*Armstrong v. Thompson*, 80 A.3d 177 (D.C. 2013) ........................................................ 10

*Arpaio v. Zucker*, 414 F. Supp. 3d 84 (D.D.C. 2019) ..................................................... 16

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017) ............................. 6, 7

*Calder v. Jones*, 465 U.S. 783 (1984) ............................................................................... 7

*Chandler v. Berlin*, 998 F.3d 965 (D.C. Cir. 2021) ....................................................... 20

*Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010) ....................................................... 8

*Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415 (D.C. Cir. 1991) .................. 9

*Farah v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013) ......................................... 11

*Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*,
    774 A.2d 332 (D.C. 2001) .................................................................................. 14, 15

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) ............................................ 20, 22

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) ........... 17, 19

*Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128 (D.D.C. 2016) ......................... 17

*Howard University v. Best*, 484 A.2d 958 (D.C. 1984) ................................................. 12

*Klayman v. Segal*, 783 A.2d 607 (D.C. 2001) ............................................................... 12

*Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C. Cir. 1988) .............. 15, 18

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) ........................................ 10

*Murray v. Shaw*, No. 24-cv-00640, 2025 U.S. Dist. LEXIS 56247 (D.D.C. Mar. 26, 2025) ....... 13

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ................................... 9, 11

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ........................................................... 17, 19

*Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1 (D.D.C. 2001) ..................... 14, 15

*Walden v. Fiore*, 571 U.S. 277 (2014) ............................................................................... 5, 7, 8, 9

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) ............................................ 12

*Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) ..................................................... 8, 9

**INTRODUCTION**

Defendant Jasmine Battle is a seasoned and well-respected administrative professional, whose career has included working with former cabinet-level officials.  She did not seek out becoming a whistleblower, but when she witnessed dysfunction, she did what conscientious public servants are supposed to do, she reported it.  Now, years later, Plaintiff Travis Adkins is lashing out at her for a public record that shows he presided over one of the most corrupt federal agencies in recent memory.  The irony, of course, is that he has shown no compunction in making personal and professional attacks against Defendant Battle in a forum where he knows he enjoys absolute immunity.

In her motion to dismiss this case, Defendant Battle persuasively showed that the Amended Complaint suffers from structural and factual deficiencies that cannot be corrected through another amended complaint, let alone through an opposition brief.  Plaintiff does not rebut the argument that he is a public figure.  He admits that this case involves a Maryland resident who communicated with a Virginia-based reporter for a Tennessee-based publisher.  (*Id.* at 11.)  And he cannot adequately plead falsity or actual malice because there is no basis for such claims.  Recognizing that he cannot amend himself out of these deficiencies, he makes the extraordinary argument that the Court should allow him burdensome discovery so that he can find a basis for suing Defendant Battle.  But no basis exists under well-established law.  For the reasons set out in Defendant Battle's Motion and in this reply, the Court should dismiss Plaintiff's Amended Complaint with prejudice and spare her from being collateral damage in a bare-knuckle partisan fight.

1

**ARGUMENT**

## I.    PLAINTIFF HAS NOT ESTABLISHED JURISDICTION OVER DEFENDANT BATTLE

Plaintiff's Opposition does not cure the jurisdictional defects in the Amended Complaint. As pled, the Amended Complaint alleges only that Defendant Battle is a Maryland resident who communicated with a Virginia-based reporter for a Tennessee-based publisher. (Opp. at 11.)  He also does not meaningfully address the fact that the Amended Complaint does not allege where those communications occurred. (*Id.* at 10.)  It also does not allege where those communications occurred or any other facts showing that Defendant Battle's own suit-related conduct was directed to the District.  Plaintiff, instead, asks the Court to allow him to fill those pleading gaps with jurisdictional discovery. (*Id.* at 10 n.1.)  On a constitutional level, though, Due Process does not permit that approach.  The proper inquiry requires Plaintiff to plead facts, not hope to discover them, showing that Defendant Battle herself formed the relevant connection with the forum through the conduct giving rise to the claims at issue.  He has not done so.

### A.  Due Process Requires Forum-Directed Conduct by the Defendant

The personal-jurisdiction inquiry focuses on the relationship between the defendant, the forum, and the litigation.  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  For specific jurisdiction, the plaintiff must show that "the defendant's suit-related conduct" created a "substantial connection with the forum State." *Id.* at 284.  That analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285.  "[M]ere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290.  The proper question is "whether the defendant's conduct connects [her] to the forum in a meaningful way." *Id.*

2

Plaintiff's Opposition does not identify facts satisfying that standard.  It points, instead, to three bases for jurisdiction over Defendant Battle: (1) she "work[s] in D.C.," (2) her "knowledge of events occurring in D.C.," and (3) her "alleged role in generating accusations about a D.C. resident and agency head that would foreseeably inflict injury in D.C."  (Opp. at 13.)  None of those allegations, as pled, establishes the required claim-specific forum connection.  Current employment in the District is not enough unless it is connected to the challenged statements.  The D.C.-related subject matter of the reporting is not enough unless Defendant Battle's own conduct was directed here.  And foreseeable in-forum effects are not enough unless they arise from forum-directed conduct by the defendant herself.  *Walden* makes each of those distinctions clear.

Significantly, the Opposition does not engage with *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), which Defendant Battle's Motion cited for the dispositive proposition that "[w]hen there is no [connection between the forum and the specific claims at issue], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Id.* at 264.  Plaintiff's central jurisdictional theory, that Defendant Battle's continued employment in the District supplies the constitutional nexus, rests on precisely the "unconnected activities" *Bristol-Myers* held insufficient.  The Amended Complaint alleges that Defendant Battle "continues to work in Washington, D.C. today."  (Am. Compl. ¶ 14.)  It does not allege that her current employment has any relationship to the statements she is alleged to have made to a Virginia-based reporter about events that occurred years earlier at a different employer.  That is the type of fact pattern that *Bristol-Myers* rejects.

Plaintiff's effort to "b[i]nd up" Defendant Battle's current employment with the alleged tort confirms the defect.  (Opp. at 13.)  In his Opposition, he identifies no connection between

Defendant Battle's current job and the alleged defamation other than the fact that the former is in the District and the latter concerned an agency in the District. That is geographic coincidence, not a substantive nexus. *Bristol-Myers* forecloses that argument. *See* 582 U.S. at 264.

### B. *Calder* Does Not Salvage Plaintiff's Theory

Unable to overcome *Walden* and *Bristol-Myers*, Plaintiff resorts to *Calder v. Jones*, 465 U.S. 783 (1984). (Opp. at 12.) But it does not bridge the pleading gap. As *Walden* explained, the *Calder* defendants were "a reporter and an editor, both of whom worked for the National Enquirer at its headquarters in Florida. The plaintiff's libel claims were based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000." *Walden*, 571 U.S. at 286–87. The "crux of *Calder*" was "the reputation-based 'effects' of the alleged libel." This injury "would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens." *Id.* at 287–88.

That is not what the Amended Complaint alleges here. It does not allege that Defendant Battle wrote the articles, edited them, selected the District as a target market, controlled their distribution, or otherwise directed publication into the District. As *Walden* explained, *Calder*'s "effects test" turns on whether the defendant's own conduct was directed at the forum. At most, the Amended Complaint alleges that Defendant Battle served as a source for a reporter located outside the District. On those allegations, Plaintiff has not pled the kind of forum-directed conduct that made jurisdiction proper in *Calder*.

Plaintiff's invocation of *Calder*'s "expressly aimed" language makes the analytical error *Walden* identified. (Opp. at 12.) *Walden* held that "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives

4

or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [her] to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Plaintiff inverts that inquiry, arguing that the Court has jurisdiction over Defendant Battle in this matter because he resides in the District, because the subject matter of the statements in the articles relate to the District, and because the injury was felt here. That is the theory *Walden* rejected.

### C. Courts Confronting Analogous Facts Reject Jurisdiction

The Fifth Circuit's decision in *Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010), provides a good example of the application of this jurisdictional inquiry in an analogous circumstance. The plaintiff sued a New York defendant in Texas for defamatory statements the defendant made to reporters about the plaintiff's alleged steroid use. The statements concerned events that occurred partly in Texas and injured a Texas resident. The Fifth Circuit held that Texas could not exercise specific jurisdiction. *Id.* at 379–80. The defendant's statements were not "expressly aimed" at Texas merely because they concerned a Texas plaintiff and Texas-connected events. The relevant conduct was speaking to non-Texas reporters in non-Texas locations.

So too here. Defendant Battle, a Maryland resident, is alleged to have spoken to a Virginia-based reporter for a Tennessee-based publisher about events that occurred years earlier at a federal agency in the District. The forum connections Plaintiff invokes belong to the agency, the plaintiff, and the publisher, not to Defendant Battle. The same analysis governed in *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002), where the Fourth Circuit held that even a publisher's articles concerning forum-state events and a forum-state plaintiff did not support

forum jurisdiction absent a manifest intent "to target and focus on" forum readers. *Id.* at 263. If a publisher's articles about forum-connected events do not support forum jurisdiction without forum targeting, a source's private communications to an out-of-forum reporter about those same events do not.

### D. Plaintiff's Request for Jurisdictional Discovery Confirms the Pleading Defect

Plaintiff's fallback request for jurisdictional discovery does not solve the pleading problem. (Opp. at 10 & n.1.) In this Circuit, jurisdictional discovery is not warranted where a plaintiff offers only speculation that discovery might uncover forum contacts. In making such a request, the plaintiff must identify specific facts suggesting that discovery would likely reveal a basis for jurisdiction. *See Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425–26 (D.C. Cir. 1991).

Plaintiff reframes the burden, arguing that "requiring a defamation plaintiff to know where a conversation between defendants occurred before discovery imposes a wholly impractical and unreasonable burden." (Opp. at 10.) But the Due Process Clause does not permit a court to exercise authority over a non-resident defendant on the hope that the basis for jurisdiction will emerge in discovery. The plaintiff must plead facts establishing that authority before the defendant is subjected to the burdens of litigation. *Walden*, 571 U.S. at 283–86. Plaintiff has not done so, and his Opposition does not contend otherwise. It asks instead for an opportunity to discover whether his jurisdictional theory has any factual basis. Rule 12(b)(2) does not permit that.

## II. PLAINTIFF HAS NOT PLED FALSITY FOR THE TAILOR'S-BILL OR HOTEL-DEMAND STATEMENTS

A statement is not actionable as defamation unless the plaintiff pleads its falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). Where a statement is

substantially true, such that its "gist" or "sting" is accurate, it cannot support a defamation claim regardless of how a reader might construe its surrounding implications. *Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–17 (1991). The Motion argued that two of the three statements attributed to Defendant Battle, the tailor's-bill statement and the hotel-demand statement, fail this threshold requirement. The Opposition confirms both failures.

### A.  Plaintiff Does Not Meaningfully Challenge the Truth of the Tailor's-Bill Statement

The challenged statement is that Plaintiff "had a tailor fit him for three custom suits, and sent the bill to the agency." (Am. Compl. ¶ 176.) Plaintiff cannot seriously contest the literal truth of this statement. His own counsel produced the documentary evidence in pre-litigation correspondence with the other defendants: the tailor's bill was sent to Plaintiff's executive assistant's USADF email, with USADF's office address as the billing address. (Mot. at 29; Mot. Ex. G; Am. Compl. ¶ 78.)

Plaintiff's response is that Defendant Battle's statements, "[r]egardless of the additional context The Daily Wire Defendants added to this claim—putting it under the heading 'Using poverty funds for luxury'—… themselves obviously convey a false statement that Mr. Adkins intended to or in fact had USADF pay for his personal suits." (Opp. at 22.) That argument concedes everything that matters. It is an argument about what a reader would infer from the underlying true fact, not about whether the underlying fact is false. D.C. defamation law distinguishes those questions, and the distinction is dispositive.

### B.  Plaintiff Has Not Pled That He Did Not Demand $1,000-Per-Night Hotels

The hotel-demand statement fails for a related reason. The challenged statement is that Plaintiff "brushed off government rules about travel costs and demanded $1,000-a-night hotels,

7

summarily firing an assistant who raised concerns about his travel arrangements." (Am. Compl. ¶ 198.) But the Amended Complaint does not allege that he never demanded high-priced hotels; instead, it asserts only that USADF's travel approval process would have prevented the demand from succeeding. (Am. Compl. ¶ 95.) Plaintiff further refined his denial of the hotel-demand statement in pre-suit comments from Plaintiff, allowing that he might have demanded high-priced hotels, but that "he paid for the overage with his own money." (Mot. Ex. G.) The Opposition follows a similar path, asserting that Plaintiff "never demanded extravagant hotel stays at the taxpayer's expense," but not denying that he demanded high-priced hotels. (Opp. at 22.) A plaintiff bears the burden of pleading falsity, and that burden is not satisfied by allegations directed at a proposition different from the one the defendant is alleged to have asserted. *Hepps*, 475 U.S. at 776; *Farah v. Esquire Magazine*, 736 F.3d 528, 534–35 (D.C. Cir. 2013).

### C. Plaintiff's Contradictory Defamation-by-Implication Theory Fails

Plaintiff's response to the truth of the underlying statements is to argue that they "obviously convey" a false implication. (Opp. at 22.) That is a defamation-by-implication argument, however Plaintiff characterizes it. And his oppositions to the motions to dismiss contradict themselves on this point. In Plaintiff's opposition to the other defendants' motion, Plaintiff argued that the tailor's-bill statement is defamatory because it appears under the "Using poverty funds for luxury" header and because Mr. Rosiak elsewhere characterized USADF officials as "taking money that was supposed to go to poor Africans and using it for themselves ... to buy high-end suits." (Pl.'s Opp. to Daily Wire Mot. at 32–33.) That argument depends on the publisher's editorial framing. The argument Plaintiff advances against Defendant Battle is that the bare statement carries the same defamatory meaning "regardless of" that framing. (Opp.

at 22 ("Statements 2 and 3 [the tailor's bill and hotel demand] are false statements of fact on their faces regardless of anyone's attempted interpretation.")  Both cannot be true.  Either the defamatory sting requires the publisher's contribution, in which case it is not attributable to Defendant Battle, or it inheres in the source's bare words and the publisher's framing is irrelevant.  Plaintiff cannot adopt the framing-dependent theory against the publisher and the framing-independent theory against the source.

The Opposition's argument, that Defendant "Battle's statement plainly conveys the defamatory meaning that Mr. Adkins did not simply have a bill literally forwarded to his email, but that he had that bill 'sent to the agency' to be paid by the agency, in violation of government rules, which would constitute a federal crime," is defamation by implication renamed.  (Opp. at 22.)  Under *White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990), defamation by implication requires that "the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference."  *Id.* at 520 (emphasis in original).  That inquiry looks to the "manner or language" of the communication, including the editorial choices a publisher makes in presenting facts.  Defendant Battle made no such choices.  She did not write the article, did not write the headings, and did not make the editorial choice of placing certain statements under certain headings.  The defamatory implication Plaintiff perceives flows from the publisher's communicative choices, not from a source's private statements to a reporter. *White* makes clear that defamation-by-implication liability tracks the publisher's deliberate framing, not some unspecified reader's leaps from underlying facts.

Plaintiff's reliance on *Howard University v. Best*, 484 A.2d 958 (D.C. 1984), and *Klayman v. Segal*, 783 A.2d 607 (D.C. 2001) in his opposition to the other defendants' motion to

9

dismiss would not produce a different result.  (Opp. at 21–22.)  Those cases establish only that statements should be interpreted in context.  They do not displace the *White* requirement that, where a defendant's contribution is the conveyance of underlying true facts with defamatory sting comes from contextual framing, the framing must be the defendant's own.  Defendant Battle's alleged contribution, even on Plaintiff's pleading, was the conveyance of true facts to a reporter.  Because framing was the publisher's, the implication is not actionable against her. *Murray v. Shaw*, No. 24-cv-00640, 2025 U.S. Dist. LEXIS 56247, at *80 (D.D.C. Mar. 26, 2025) ("Given that [the defendant] is not responsible for the media's editorial choices, which [the plaintiff] argues caused her harm, ... the court cannot conclude that [the plaintiff] has plausibly alleged that [the defendant] defamed her by implication with these statements.").

Plaintiff cannot have it both ways.  He asserts that "Plaintiff does not allege that Ms. Battle or The Daily Wire Defendants defamed him by implication—they made specific false statements of fact."  (Opp. at 18.)  Two pages later, his argument reverts to implication: the tailor's-bill statement "conveys the defamatory meaning" that Plaintiff "had that bill 'sent to the agency' to be paid by the agency," and the hotel-demand statement appears in a section titled "Using poverty funds for luxury."  (Opp. at 22.)  Plaintiff cannot disclaim the implication theory in one breath and rely on it in the next.  The Court should hold him to his disclaimer.  The bare statements at issue are true, and Plaintiff has disclaimed any reliance on the framing that gives them their alleged defamatory force.

## III.  STATEMENTS DERIVED FROM DEFENDANT BATTLE'S EEOC AFFIDAVIT ARE ABSOLUTELY PRIVILEGED

Defendant Battle's Motion demonstrated that the fourth count's hiring-discrimination allegations are quoted directly from an affidavit submitted in an EEOC proceeding, rendering them protected by the absolute privilege for statements made in quasi-judicial proceedings.

10

*Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 338 (D.C. 2001); *see also Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 8 (D.D.C. 2001). Plaintiff argues in response that the privilege does not apply because Defendant Battle "did not comment on an ongoing judicial or legislative proceeding" and that the statements "at issue in this proceeding are not quoted or taken from her affidavit but rather statements she specifically and only gave to The Daily Wire." (Opp. at 30.) That response does not actually address the applicability of the privilege.

The Amended Complaint identifies four partial quotations from the other defendants' articles as false and defamatory:

- "Mr. Adkins 'wanted his entire team (to include the General Counsel) to consist only of Black people,'"

- "[Mr. Adkins] 'wanted all of his direct reports to be Black,'"

- "Mr. Adkins 'refused to hire white people,'" and

- "'[Mr. Adkins] was very adamant in only hiring African Americans, mainly female.'"

(Am. Compl. ¶¶ 210, 212.) In full, the first two partial quotations come from this section of the May 9 article:

> Adkins' former assistant, who is black, said in a sworn affidavit that "On at least three occasions, Mr. Adkins told me that he wanted his entire team (to include the General Counsel) to consist only of Black people. He wanted all of his direct reports to be Black."

(Am. Compl. Ex. B.) For comparison's sake, Defendant Battle stated in relevant parts the following in her affidavit to the EEOC:

4. On at least three occasions, Mr. Adkins told me that he wanted his entire team (to include the General Counsel) to consist only of Black people. He wanted all of his direct reports to be Black.

11

Despite the article's sourcing of the entire quotation to the affidavit, Plaintiff asserts in his opposition that those "statements at issue in this proceeding are not quoted or taken from her affidavit."  (*Contrast* Opp. at 30 *with* Am. Compl. ¶ 56 ("Indeed, The Daily Wire Defendants had seen Ms. Battle's affidavit from the EEOC proceeding—they cited it in their reporting").)

Statements made in EEOC proceedings, including sworn affidavits, are absolutely privileged.  *Stith*, 160 F. Supp. 2d at 8; *see also Finkelstein*, 774 A.2d at 338.  The privilege applies regardless of malice and regardless of motive.  *Id*.  To the extent Plaintiff's fourth count rests on language Defendant Battle included in her sworn EEOC affidavit, the privilege bars the claim.

Plaintiff's argument that the privilege is defeated because the other defendants republished the affidavit's contents in a different forum misunderstands the doctrine.  The privilege protects the statement at its source.  The speaker's privileged statement does not lose its privileged character because someone else later quotes it.  To hold otherwise would mean that any witness whose sworn statement is later quoted in the press loses the privilege protecting that statement, a result inconsistent with the privilege's purpose of protecting candor in adjudicative proceedings.

## IV.  PLAINTIFF HAS NOT SUFFICIENTLY PLED ACTUAL MALICE

In her motion to dismiss, Defendant Battle identified three defects in Plaintiff's actual-malice allegations: the conclusory and conditional language of the pleading itself, the impermissible reliance on ill will and motive in place of subjective doubt, and the absence of any factual allegation that, when Defendant Battle allegedly spoke to the other defendants, she "in fact entertained serious doubts" about the truth of her statements.  *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292-93 (D.C. Cir. 1988) (citations omitted).  The Opposition does

not address those defects on the terms the Amended Complaint sets, abandoning the pleading to advance a new theory: Defendant Battle's firsthand exposure to the events she described, combined with the alleged falsity of her statements, automatically satisfies the actual-malice standard. That theory bootstraps a legal conclusion from a single allegation, something that is both foreclosed by D.C. Circuit authority and undermined by the public record.

### A. Plaintiff's New Theory Does Not Plead Actual Malice

The Amended Complaint pleads actual malice against Defendant Battle in conditional, formulaic terms. Each count contains the same sentence: "To the extent Defendant Battle published the defamatory statement[s] to The Daily Wire Defendants, she did so with actual malice, in that she was aware at the time of publication that the statement[s] were false." (Am. Compl. ¶¶ 183, 205, 230.) Defendant Battle's Motion demonstrated that a recitation of the legal standard with no factual content, hedging on the foundational fact that Defendant Battle made the statements at all, is the type of conclusory pleading *Iqbal* and *Twombly* prohibit. *See Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019).

Plaintiff responds with an entirely different theory of malice. He now argues that "Ms. Battle did not just recklessly disregard the truth; she knew her accusations were false and made them anyway," because she "was a firsthand participant in the events she described" and "[e]ither the events and incidents described by Ms. Battle happened or they did not." (Opp. at 26.) To reach this conclusion, Plaintiff bootstraps from a single allegation, that what Defendant Battle said is false, to a hypothesis, that she must have believed it was false, allowing him to arrive at a legal conclusion, that she must have acted with actual malice. Plaintiff buttresses this bootstrapping with citations to three out-of-circuit cases involving highly personal facts and inflammatory allegations, none of which are even remotely applicable in a matter

13

involving how a public figure managed a federal agency.  The Opposition's attenuated reasoning, which rests on an unproven assertion of falsity, does not meet the pleading requirements of *Iqbal* and *Twombly*.  The Court should evaluate the actual-malice element on the pleading actually filed, not on a theory advanced for the first time in opposition briefing. *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 144 (D.D.C. 2016).

Plaintiff's theory also proves too much.  If a former employee's firsthand exposure to events automatically satisfied actual malice whenever the employee's account differs from the employer's, every disgruntled-employee defamation case would survive *Iqbal*.  That outcome is incompatible with the Supreme Court's repeated holdings that actual malice is a "subjective" inquiry into whether "the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  Put differently, actual malice is a subjective inquiry that turns on what the defendant actually knew or believed, not on what a reasonable person would have believed. *See also Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).  A pleading that infers subjective doubt from the mere fact of personal involvement collapses the subjective-knowledge inquiry into a presumption.

The D.C. Circuit has been explicit that this inferential leap is impermissible.  In *Tah v. Global Witness Publ., Inc.*, the court reaffirmed that "evidence of ill will 'is insufficient to support a finding of actual malice.'"  991 F.3d 231, 243 (D.C. Cir. 2021) (citation omitted). Plaintiff's Opposition does not cite *Tah* and does not engage with the controlling D.C. Circuit authority on this point.  The Opposition relies instead on *Harte-Hanks* for the unremarkable proposition that "evidence concerning motive" is "relevant" to actual malice.  (Opp. at 27.) Relevance, however, is not the same as sufficiency. *See Tah*, 991 F.3d at 243.

14

**B. Plaintiff's "Conjuring" Theory Is Belied by His Pleading and the Public Record**

The Opposition further argues that Defendant Battle did not just get facts wrong, but that she "conjured them." (Opp. at 26.) Putting aside that Defendant Battle could not "conjure" facts that Plaintiff admits to, his new conjuring theory is independently undermined by the public record. The most incendiary factual allegation Plaintiff says Defendant Battle invented for the other defendants, that USADF leadership "actively sought to exclude veterans and individuals who are not of African descent from hiring," was not invented by anyone. It appeared in a letter from the Ranking Member of the Senate Foreign Relations Committee to a federal inspector general on November 1, 2023, eighteen months before any of the challenged articles were published. (Mot. Ex. A at 3.) The allegation has been a matter of public record continuously since that date.

Plaintiff tries to use the absence of an anti-veteran allegation in Defendant Battle's October 2023 EEOC affidavit as evidence that she conjured the allegation later for the other defendants. (Opp. at 27.) That claim, at bottom, depends on the premise that the allegation originated with Defendant Battle. It did not. The Senate Letter, a more authoritative, more publicly visible, and earlier source, contained the same allegation before Defendant Battle is alleged to have spoken to the other defendants. A person who repeats an allegation already on the public record from an authoritative source cannot, on those facts alone, be inferred to have conjured it. Nor can a source who repeats publicly documented concerns about an agency she once worked for be said to exhibit the "high degree of awareness of … probable falsity" that actual malice requires. *Liberty Lobby*, 838 F.2d at 1292–93 (citation omitted).

15

### C.  Plaintiff's Reliance on Battle's Silence Confirms the Pleading Defect

The Opposition's final actual-malice argument is that Defendant Battle "declined to confirm whether she had been accurately quoted or cited in the article" when contacted by Plaintiff's counsel post-publication, and that this silence is "yet more proof" of actual malice. (Opp. at 8, 14–15, 27.)  That argument fails twice.

A non-party's failure to respond to opposing counsel's pre-litigation demand is not an admission of identity or content.  It is, at most, an exercise of the well-recognized professional norm that potential defendants do not engage with adverse counsel before suit.  The inference Plaintiff urges from Defendant Battle's silence is no stronger than the competing inference that a private citizen confronted by a demand letter chose not to respond.

Even if the silence supported the inference that Defendant Battle made the statements, it would not establish actual malice.  Actual malice concerns the speaker's state of mind at the time of publication, not at the time of post-publication outreach.  *St. Amant*, 390 U.S. at 731; *Harte-Hanks*, 491 U.S. at 667.  A refusal to engage with a plaintiff's lawyer years later tells the Court nothing about whether the defendant entertained serious doubts about her statements when she made them.

## V.  PLAINTIFF HAS NOT PLED ACTIONABLE INJURY ATTRIBUTABLE TO DEFENDANT BATTLE

Defendant Battle's final argument in her Motion was that Plaintiff cannot establish injury allegedly caused by her, as opposed to injury caused by the other defendants' editorial choices and by the cascade of authoritative pre-existing sources of reputational harm catalogued in the Motion.  The Opposition does not meaningfully address this discussion despite meaningfully undermining Plaintiff's argument that Defendant Battle harmed him professionally.

16

### A.  The Causation Problem Cannot Be Cured by Aggregating Harm Across Defendants

A plaintiff alleging defamation must connect the harm he claims to the specific statement he challenges.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974).  Where multiple defendants are sued for related but distinct conduct, the plaintiff must allege which conduct caused which harm.  *See Twombly*, 550 U.S. at 554–56, 566–70.  The Amended Complaint does the opposite.  It catalogues a series of generalized harms, such as disinvitations from speaking engagements, lost employment opportunities for positions never applied for, and diminished philanthropic standing, and attributes them collectively to "the articles" without distinguishing which defendant's conduct caused which harm.  (Am. Compl. ¶¶ 7, 129–35.)  As an example of this failure, the Amended Complaint does not even plead that Defendant Battle intended her alleged statements to be republished by other defendants.  *See, e.g., Chandler v. Berlin*, 998 F.3d 965, 976–77 (D.C. Cir. 2021).

The Opposition asserts that "online threats and harassment specifically referenced Ms. Battle's statements to The Daily Wire."  (Opp. at 24–25.)  The Amended Complaint, however, expressly attributes the harassment to the other defendants' editorial choices.  Paragraph 126 alleges that the other defendants "knew their false allegations about Plaintiff would elicit such public commentary" because "[t]hey had seen the same racist dogpiling play out in connection with other articles they had published."  The Amended Complaint thereby identifies the cause of the harassment: the other defendants' choice of headline, photograph, and inflammatory framing, calculated to elicit a particular audience response.  Defendant Battle is not alleged to have written the articles, selected the headlines, posted to social media, or cultivated the readership that responded to it.  The harassment, as Plaintiff himself pleads it, is the harm for the other defendants answer for, not Defendant Battle's.

17

### B.  Pre-Existing Authoritative Sources Sever the Causal Chain

The Motion catalogued the independent sources of reputational injury that preceded the articles: Senator Risch's November 2023 letter naming Plaintiff personally and alleging "complicit[y] in, corrupt and potentially unlawful practices"; the January 2026 federal criminal conviction of Plaintiff's finance director, Mathieu Zahui, for accepting illegal gratuities while serving under Plaintiff; the August 2024 USAID OIG management advisory addressed to Plaintiff personally, finding that USADF officials "knew of suspected misuse of foundation funds and equipment purchased through foundation grants but failed to report this information to OIG as required"; the August 2025 USAID OIG evaluation report finding "[g]aps in [p]olicy and [g]uidance" and inconsistent grant administration during Plaintiff's tenure; and the September 2025 GAO finding that USADF lacked any "strategic approach" to fraud risk and that USADF's procurement officials had "engaged in questionable practices when making foreign assistance awards."  (Mot. at 3–8 & Exs. A–E.)

The Opposition does not engage with any of this.  It does not dispute the existence of the Senate Letter.  It does not dispute the fact of Zahui's criminal conviction.  It does not dispute the OIG and GAO findings.  It does not argue that those sources are inadmissible, irrelevant, or insufficiently public.  It ignores them.

The reputational interests Plaintiff claims were injured by Defendant Battle's alleged statements, such as his integrity as a financial steward, his fitness to lead a federal agency, and his management practices, had all been publicly impugned by sources of substantially greater institutional weight than an anonymous former assistant speaking to a reporter, and had been so impugned for months and years before the articles appeared.  A causation theory that ignores those independent sources cannot survive the pleading stage.  *See Gertz*, 418 U.S. at 350.

18

This is particularly so where the specific subject matter of Defendant Battle's alleged statements tracks the prior public allegations. The anti-veteran-discrimination allegation appeared in the Senate Letter eighteen months before the articles. The misuse-of-funds and travel-rule allegations have been examined and addressed in OIG reports. The questionable procurement allegations had culminated in the criminal prosecution of Plaintiff's own finance director. The Amended Complaint does not, because it cannot, explain how Defendant Battle's alleged statements caused any harm to Plaintiff's reputation that had not already been inflicted by these substantially more authoritative sources.

## C. Per Se Designation Does Not Substitute for Causation

Plaintiff's response to the causation problem appears to be that designation as defamation per se relieves him of the burden of pleading specific injury. (Opp. at 23.) That is incorrect. The Supreme Court held in *Gertz* that public figures may not recover presumed damages regardless of the per se designation and must plead and prove actual injury. 418 U.S. at 349–50. The per se designation provides only that, where actual injury is established, the plaintiff need not prove the precise dollar value of his losses. It does not relieve him of the threshold obligation to plead causation between specific challenged statements and specific cognizable harm. Plaintiff has not done so.

## CONCLUSION

For each of the foregoing reasons, the Court should dismiss the claims against Defendant Battle. The Amended Complaint does not establish personal jurisdiction over a Maryland resident whose alleged communications with a Virginia-based reporter have no demonstrated nexus to the District. It does not plead falsity for two of the three sets of statements at issue, and to the extent the third rests on Defendant Battle's EEOC affidavit, those statements are

19

absolutely privileged.  It does not plead actual malice with the factual specificity *Iqbal* requires, and the new theory Plaintiff advances in the Opposition cannot repair the pleading.  And it does not plead actionable injury causally connected to Defendant Battle's specific statements, particularly in light of the substantial pre-existing public record of authoritative sources documenting precisely the conduct the articles addressed.  The Court should grant the Motion and dismiss the Amended Complaint as to Defendant Battle with prejudice.

Dated: May 14, 2026                                    Respectfully submitted,


/s/ Sean W. O'Donnell    _
Sean O'Donnell (D.C. Bar No. 90040392)
Michael Bekesa (D.C. Bar No. 995749)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Tel: (202) 646-5180
Email: SODonnell@JudicialWatch.org

*Counsel for Defendant Jasmine Battle*