**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| TRAVIS ADKINS,<br><br>                              *Plaintiff*,<br><br>v.<br><br>THE DAILY WIRE, LLC, LUKE<br>ROSIAK, and JASMINE BATTLE,<br><br>                              *Defendants*. | Case No.: 1:25-cv-4399-DLF<br><br>**ORAL HEARING REQUESTED** |

**THE DAILY WIRE, LLC AND LUKE ROSIAK'S REPLY IN SUPPORT OF MOTION
TO DISMISS FIRST AMENDED COMPLAINT FOR IMPROPER VENUE,
OR, IN THE ALTERNATIVE, FAILURE TO STATE A CLAIM**

i

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.    VENUE IS IMPROPER IN THE DISTRICT OF COLUMBIA. ...................................... 3

III.    ADKINS FAILS TO STATE A CLAIM FOR DEFAMATION. ..................................... 6

    A.    None of Adkins' Defamation Claims Involve False, Defamatory, and Unprivileged Statements. ....................................................................................................... 7

        1.    The Media Defendants' reporting about how Adkins obtained his position at USADF (Statement 1) is neither false nor defamatory. ......................................................... 7

        2.    The Media Defendants' reporting that Adkins' tailoring bill was sent to USADF (Statement 2) was factual. .............................................................. 11

        3.    The Media Defendants' reporting that Adkins "demanded $1,000-a-night hotels" (Statement 3) was factual. ............................................................. 12

        4.    Part of the Media Defendants' reporting about Adkins' discriminatory statements is shielded by the fair report privilege. ................................................... 12

    B.    Adkins Failed to Allege Actual Malice for All Four Statements. .................................... 15

        1.    Adkins' burden was to allege facts showing clear and convincing evidence of actual malice. ................................................................................................ 16

        2.    Adkins has no colorable actual malice arguments specific to the four statements. ....... 11

        3.    The Media Defendants' reliance on a source shows a lack of actual malice. ............... 12

        4.    Adkins' generalized actual malice allegations do not add up to a clear and convincing showing of actual malice. ............................................................. 12

    C.    Dismissal Should Be Without Leave to Amend. ............................................................. 24

IV.    CONCLUSION...................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) ........................................ 8

*Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 14 (D.D.C. 2003) ................................ 3

*Blackmon-Malloy v. United States Capitol Police Bd.*, No. CV 01-2221 (EGS), 2024 WL
　4298853, at *2 (D.D.C. Sept. 26, 2024) ............................................................................ 18

*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998) .................................................................. 6

*Byd Co. v. All. for Am. Mfg.*, No. 21-7099, 2022 WL 1463866, at *1 (D.C. Cir. May 10, 2022)
Civil Action No. 19-324 (TJK), 2020 WL 999053, at *1 (D.D.C. Mar. 1, 2020) ...................... 16

*Couch v. Verizon Commc'ns, Inc.*, Civil Case No. 20-2151 (RJL), 2021 WL 4476698, at *3
　(D.D.C. Sept. 30, 2021) .................................................................................................... 16

*Curtis Publishing Co. v. Butts*, 388 U.S. 130, 163 (1967) .............................................................. 23

*Dimonstein v. Stidman*, 986 F.3d 870, 871 (D.C. Cir. 2021) ........................................................... 5

*Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862 (W.D. Va. 2016) ..................................... 22, 23

*Fairbanks v. Roller*, 314 F. Supp. 3d 85, 93 (D.D.C. 2018) ........................................................ 16

*Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 496 F. Supp. 2d 137
(D.D.C. 2007) ..................................................................................................................... 3, 4, 5

*Guildford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 602–03 (D.C. 2000) ............................ 11

*Harper v. Walters*, 822 F. Supp. 817, 827 (D.D.C. 1993) ............................................................ 10

*Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657 (1989) ................................... 20, 21, 24

*Howard Univ. v. Best*, 484 A.2d 958 (D.C. 1984) .................................................................. 11, 13

*Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576 (D.C. Cir. 2016) ................................................... 17, 20

*Klayman v. Segal*, 783 A.2d 607 (D.C. 2001) .................................................................. 10, 11, 13

*Knight v. Blackford*, 3 Mackey (14 D.C.) 177, 182–83 (Sup. Ct. D.C. 1877) ............................ 11

*Libre by Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149 (D.D.C. 2018) ................................... 12, 13

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) ......................................................... 8

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .................................................................. 23

*Nicholson v. Promotors on Listings*, 159 F.R.D. 343, 354 (D. Mass. 1994) ................................. 9

*Nigerians in Diaspora Org. Americas v. Ogbonnia*, 203 F. Supp. 3d 45, 46 (D.D.C. 2016)......... 3

*Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 281–82 (1974) ..................................... 21

*Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218 (D.D.C. 2012) ....................................................... 16

*Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012) ...................................... 25

*Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980) ...................................................................... 9

*Smartmatic USA Corp. v. Herring Networks, Inc.*, 610 F. Supp. 3d 92 (D.D.C. 2022) ............. 4, 6

*Talley v. Time, Inc.*, 923 F.3d 878, 896 (10th Cir. 2019) .............................................................. 21

*Tavoulareas v. Piro*, 763 F.2d 1472 (D.C. Cir. 1985) ............................................................ 21, 22

*Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) ........................................................... 21

*Trudeau v. FTC*, 456 F.3d 178, 193–94 (D.C. Cir. 2006) ........................................................... 12

*United States v. All Assets Held at Bank Julius*, 229 F. Supp. 3d 62, 70 (D.D.C. 2017) ............. 25

*US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 34 (D.D.C. 2022) ..................................... 15, 17

*Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 273 (D.D.C. 2017) ......................... 12

**<u>Treatises</u>**

Restatement (Second) of Torts § 611 cmt. f (1977)..........................................................................10

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants The Daily Wire, LLC ("Daily Wire") and Luke Rosiak ("Rosiak") (collectively, the "Media Defendants") hereby file their Reply to Plaintiff Travis Adkins' ("Adkins") Memorandum of Points and Authorities in Opposition ("Opposition" or "Opp'n") [Dkt. 26] to the Media Defendants' Motion to Dismiss First Amended Complaint ("FAC") [Dkt. 9] for Improper Venue, or, in the Alternative, Failure to State a Claim ("Motion" or "Mot.") [Dkt. 23].

## I.    INTRODUCTION

The Media Defendants published a damning exposé about Adkins, chronicling his financial delinquency (tax liens and lawsuits for unpaid rent), abuse of the public trust as President and CEO of the United States African Development Foundation ("USADF") (misclassifying employees and hiding payments to them through "micropurchases" on government credit cards and pass-through LLCs; paying an employee through a Mauritanian entity without withholding taxes), and racism (referring to a former junior employee as "the white b—h"). Mot. at 9.

The Media Defendants' reporting was just the tip of the iceberg. Eighteen months before any article was published, the Ranking Member of the Senate Foreign Relations Committee sent a formal letter to the Acting Deputy Inspector General of USAID, stating that Adkins "may be complicit in, corrupt and potentially unlawful practices." Dkt. 24-1 at 10. After Adkins filed suit, his finance director at USADF was convicted of receiving illegal gratuities as a public official and making false statements to federal law enforcement, stipulating to facts showing years of corruption at USADF under Adkins' leadership. *Id.* at 11. Finally, the USAID Office of Inspector General issued a series of reports exposing USADF's mismanagement and failure to report fraud under Adkins' leadership. *Id.* at 12–15.

1

Adkins would nonetheless have the Court believe that his reputation has taken a hit, not from these facts, but because the Media Defendants reported that Adkins received his position at USADF "without even applying" ("Statement 1"); that Adkins' former assistant stated that his tailor "sent the bill to the agency" ("Statement 2"); that Adkins "brushed off government rules about travel costs and demanded $1,000-a-night hotels" ("Statement 3"); and that Adkins made a series of racist and discriminatory remarks about his hiring practices ("Statement 4").

Even looking at the Media Defendants' reporting through the same pinhole lens Adkins uses, Adkins still fails to state a single viable defamation claim against the Media Defendants. Among other deficiencies, Adkins' claims based on Statements 1–3 all suffer from a shared, fatal defect: the statements, even crediting Adkins' allegations, are not false. Adkins cannot dispute the literal truth of what the Media Defendants reported, which, in each instance, was supported either by Adkins' own deposition testimony or Rosiak's source. A close reading of the Daily Wire articles defeats Adkins' defamation claims based on Statements 1–3 because Adkins' claims are based on different assertions from the ones the Media Defendants actually made. The Media Defendants' sourcing for all four claims—Adkins' deposition in an EEOC proceeding, Battle's affidavit in that same proceeding, and information from a source—make Adkins' claims even less plausible.

Adkins further concedes that he must meet the high bar of alleging actual malice, as he is a former public official. While Adkins spends a great deal of the Opposition trying to piece together an actual malice showing, he is unable to point to any allegation showing the Media Defendants subjectively believed their reporting was false or even had serious doubts as to its truth. Instead, Adkins takes issue with the Media Defendants' reporting techniques, arguing they should have consulted different sources, worded their articles differently, or should not have believed the information they were provided. Adkins cannot allege actual malice by piecing together various

criticisms of the Media Defendants' editorial decisions that are largely divorced from the factors courts consider when assessing actual malice.

While the FAC fails on its merits, the Court need not reach the deficiencies of Adkins' claims because venue is improper in this District. Despite Adkins' protests that this is "a D.C. Case," Adkins' attempt to link the facts in the FAC to D.C. have little relation to the factors courts must consider in assessing where the events giving rise to an action occurred. A defamation case involving a Tennessee media outlet and a Virginia reporter does not belong in this District, regardless of the supposed effect their reporting had in D.C.

The Court should therefore dismiss the FAC, either for improper venue or failure to state a claim.

## II.    VENUE IS IMPROPER IN THE DISTRICT OF COLUMBIA.

Adkins failed to carry his burden of "establish[ing] that venue is proper" and that he "institute[d] the action in a permissible forum." *Nigerians in Diaspora Org. Americas v. Ogbonnia*, 203 F. Supp. 3d 45, 46 (D.D.C. 2016) (citation omitted). As the Media Defendants explained in the Motion, "'courts often focus on the relevant activities of the defendant … in determining where a substantial part of the underlying events occurred.'" *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 496 F. Supp. 2d 137, 142 (D.D.C. 2007) (quoting *Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 14 (D.D.C. 2003)). Adkins ignores this principle, focusing almost exclusively on *his* connections to D.C., while failing to cite any authorities that make those connections pertinent to the Media Defendants' venue challenge.

The Media Defendants explained in the Motion that venue would be proper in the district where the statements at issue were published. Mot. at 17–18. Despite describing this argument as "flat-out wrong," Opp'n at 26, Adkins cannot muster a single a case that rebuts the straightforward

proposition that if someone publishes defamatory speech, they can be sued in their home district. This rule is in accord with the general principle that courts focus on "the activities of the defendant," *Arab Jamahiriya*, 496 F. Supp. 2d at 142, which Adkins ignores. Adkins also ignores the various out-of-circuit cases the Media Defendants cited that follow this rule. Mot. at 18. Instead, Adkins tries to distinguish *Corsi v. Stone* and *Smartmatic USA Corp. v. Herring Networks, Inc.*, both of which the Media Defendants cited in support of the proposition that venue is proper where allegedly defamatory speech is published.

In *Corsi*, the court dismissed defamation claims asserted against Roger Stone for comments Stone made from his Florida residence. Civil Action No. 19-324 (TJK), 2020 WL 999053, at *1 (D.D.C. Mar. 1, 2020). Critically, the court cited the discussion in *Arab Jamahiriya* regarding courts' focus on the defendants' activities, explaining that venue would have been proper in the Southern District of Florida, where Stone made the comments at issue. *See id.* at *2–3. It is therefore of no consequence that the *Corsi* court did not hold that "venue in this District would be improper in a case like this one," Opp'n at 26, as the case nonetheless supports the Media Defendants' argument that the place of publication is paramount.

Adkins misreads *Smartmatic USA Corp.*, arguing that the court's focus on the "disseminat[ion]" of the defamation in this District means that venue is proper in this District so long as the Daily Wire has subscribers who read its articles in this District. *See* Opp'n at 26 & n.1. Adkins ignores key, distinguishing facts: Smartmatic alleged not only that D.C. residents viewed the *One America News* broadcast at issue, but that "OAN made and recorded many . . . false statements in its television studio in Washington, D.C., where its employees researched, edited, and produced the programs on which the statements appeared." *Smartmatic USA Corp. v. Herring Networks, Inc.*, 610 F. Supp. 3d 92, 96 (D.D.C. 2022). Just as OAN disseminated its broadcasting

in D.C., the Daily Wire disseminated the articles in Tennessee. Adkins cites no case that adopts his broad reading of "dissemination," which focuses on the readers' location, rather than the publisher's location. If the rule were as Adkins suggests, national news outlets, and indeed, even individuals who post speech on the internet, could be sued in any district in the country, provided at least one person in that district viewed the publication. This rule would be absurd and would turn the venue analysis into a nullity.

Adkins argues that venue is proper in this District because of various connections to D.C., but none are relevant to the venue analysis. Adkins first alleges that he "suffered injury here," including both presumed injury and actual injury. Opp'n at 24–25. But the location of the plaintiff's injury does not bear on venue. In emphasizing his alleged injury in this District, Adkins ignores the Media Defendants' discussion of *Dimonstein v. Stidman*, 986 F.3d 870, 871 (D.C. Cir. 2021), which stated that this Circuit has "yet to consider . . . the significance of where the harm caused by the defamation is felt." Mot. at 19. Adkins also ignores the maxim in *Arab Jamahiriya* that the "relevant activities of the defendant" is the focus of the venue analysis. 496 F. Supp. 2d at 142; Mot. at 19.

Adkins next argues that "D.C. was the locus of their articles," noting the Media Defendants' reliance on an affidavit "created by a D.C.-based employee" (Defendant Battle) and their discussion of an investigation of a D.C.-based agency. Opp'n at 25. Adkins' inability to muster a single case that ties facts like these to venue speaks volumes. *See id.* Once again, it is the defendants' activities that matter. *Arab Jamahiriya*, 496 F. Supp. 2d at 142. Simply publishing speech *about* D.C. does not mean venue is proper *in* D.C.

According to Adkins, the combination of injury in D.C. and the Media Defendants' focus on D.C. makes venue proper in D.C. But no case concluded that the presence of these two

irrelevant factors is enough for venue. And Adkins' reliance on *Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998) gives away the weakness of his argument. Adkins claims *Blumenthal* says that "venue [is] proper in this District when defamatory reporting focuses on D.C.-based activity and actors." Opp'n at 25 (citing *Blumenthal*, 992 F. Supp. at 52–54). But the cited portion of *Blumenthal* deals entirely with personal jurisdiction; the case contains no discussion of venue. The court concluded that Matt Drudge "engaged in a persistent course of conduct in the District" through his journalistic activities. *Blumenthal*, 992 F. Supp. at 56. *Blumenthal* therefore does not lend any support to Adkins' argument that the venue analysis in a defamation case turns on the focus of the allegedly defamatory reporting.

As Adkins failed to allege any facts showing that his defamation claim is based on the Defendants' actions in this District, the Court should dismiss the FAC for improper venue. In response to the Media Defendants' alternative request for transfer to the Middle District of Tennessee, Adkins argues the case cannot be transferred to that district because Defendant Battle "is not and never has been subject to the jurisdiction or process" of that district. Opp'n at 27. Given this concession, the Court should simply dismiss the case without prejudice. *See Smartmatic USA Corp.*, 610 F. Supp. 3d at 100 (explaining that a court may dismiss or transfer an action where venue is improper).

### III.   ADKINS FAILS TO STATE A CLAIM FOR DEFAMATION.

Even if the Court concludes venue is proper, the Court should nonetheless dismiss the FAC because Adkins failed to state a single plausible defamation claim against the Media Defendants. All four of Adkins' defamation claims are based on statements that are some combination of (1) factually true; (2) fair reports of court documents; and (3) not defamatory. Even if the Court accepts Adkins' framing of each statement, his defamation claims still fail because the FAC is devoid of

6

any evidence showing the Media Defendants published any of the statements with knowledge of falsity or the kind of recklessness that establishes actual malice.

     **A.**  **None of Adkins' Defamation Claims Involve False, Defamatory, and Unprivileged Statements.**

         **1.**  **The Media Defendants' reporting about how Adkins obtained his position at USADF (Statement 1) is neither false nor defamatory.**

Adkins has no defamation claim for the Media Defendants' reporting that Adkins became President and CEO of USADF "without even applying for the job" because his deposition testimony establishes as much. Adkins testified in his deposition that he "did not submit an application to join USADF." Mot. at 23. Adkins further testified that he was contacted by a board member to apply, and, unaware of any competing applicants, only recalled submitting his "CV or Bio." *Id.* Adkins' deposition testimony therefore establishes substantial truth and triggers the fair report privilege. In any event, Statement 1, even if false and unprivileged, does not rise to the level of defamation.

     **Substantial Truth.** Adkins argues that Statement 1 is "the exact opposite of the pleaded truth in every respect" because "Adkins earned his job at USADF after an application process based on his qualifications and credentials," while "Defendants' hiring statement tells readers that Mr. Adkins was handed the position due to cronyism." Opp'n at 31. Adkins' reliance on an embellished version of how he obtained the USADF position and a hyperbolic description of Statement 1 is telling: Adkins' deposition and Statement 1 do not add up to defamation.

     Even though the Media Defendants' substantial truth argument was based largely on Adkins' deposition, Adkins neither contends with his deposition testimony nor offers the Court any reason to ignore it. Instead, Adkins is careful to frame his argument around his claim that he

was "invited to apply, submitt[ed] materials and references, undert[ook] multiple rounds of interviews with a selection committee, and [was] ultimately [] chosen from a field of other applications." Opp'n at 31. This account of Adkins' hiring process is sharply at odds with the scant account Adkins gave at his deposition, which involved no reference to materials beyond his "CV or Bio," no mention of "multiple interviews" or a "selection committee," and no competing applicants. Dkt. 23-3 at 5–7. The closest Adkins gets to grappling with his deposition is a brief, and inaccurate, statement in his introduction faulting the Media Defendants for "excerpt[ing] a deposition that is not part of the pleadings[.]" Opp'n at 10. But Adkins did mention his deposition in the FAC. FAC ¶¶ 68–69. And the Media Defendants explained in the Motion that courts may consider documents incorporated by reference into a complaint on a motion to dismiss. Mot. at 11 n.1 (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)). Adkins therefore cannot hide from his deposition testimony.

Adkins correctly explains that a statement is substantially true if its "gist" or "sting" is true. Opp'n at 30 (citing *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991)). This involves asking whether the statement "'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson*, 501 U.S. at 517 (quoting R. Sack, Libel, Slander, and Related Problems 138 (1980)) (other citations omitted). "If an author alters a speaker's words but effects no material change in meaning, including any meaning conveyed by the manner or fact of expression, the speaker suffers no injury to reputation that is compensable as a defamation." *Masson*, 501 U.S. at 516.

According to Adkins, the "gist" or "sting" was that Adkins was "handed the position due to cronyism" and "had simply been handed the job as a lackey." Opp'n at 31–32. But the Media Defendants did not say that; they reported that Adkins did not apply for the position. If the Media

8

Defendants had reported that Adkins did not submit an application, was contacted by a single board member, and recalled submitting only his "CV or Bio," but nonetheless was chosen to lead a federal agency, the effect on the reader would have been no different. In either telling, Adkins (1) did not submit an actual application (the literal truth the Media Defendants reported); and (2) did not obtain his position as part of a traditional, competitive hiring process (the gist of Statement 1). At most, the Media Defendants' reference to USADF hiring Adkins without Adkins "even applying for the job" is a "minor inaccurac[y] [that] will not support a recovery," as "editorial or literary embellishments do not make true statements false." *Nicholson v. Promotors on Listings*, 159 F.R.D. 343, 354 (D. Mass. 1994) (citing *Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980)). Adkins' failure to show any meaningful difference between what he said in his deposition and what the Media Defendants reported establishes the Media Defendants' substantial truth defense as a matter of law.

**Fair Report Privilege.** As Statement 1 is a fair description of Adkins' deposition testimony, the Media Defendants are further shielded by the fair report privilege. Adkins does not dispute that the Media Defendants attributed Statement 1 to Adkins' deposition, and the foregoing section makes clear that Adkins' deposition is consistent with the Media Defendants' reporting.

*First*, Adkins argues that the Media Defendants published Statement 1 with actual malice, which defeats the privilege. Opp'n at 37–38. As Adkins made very similar actual malice arguments for each of the four statements, the Media Defendants will address them below in Section IV.B. As explained in that section, Adkins' actual malice showing for all four statements is deficient.

*Second*, Adkins argues that Statement 1 was neither a fair nor accurate report of Adkins' deposition testimony. Opp'n at 38. The fair report privilege attaches to true and false statements alike, provided the report "convey[s] to readers 'a substantially correct account of the

9

proceedings.'" *Harper v. Walters*, 822 F. Supp. 817, 827 (D.D.C. 1993) (quoting Restatement (Second) of Torts § 611 cmt. f (1977)). The Media Defendants easily clear this hurdle as they have already established that Statement 1 is an accurate encapsulation of Adkins' deposition testimony. Adkins stated in his deposition that he "did not submit an application to join USADF," which is very similar to Statement 1. Mot. at 29. Adkins argues that he "testified at length about how he applied for his job." Opp'n at 26. But that drastically overstates things. Adkins was solicited to apply for the position without knowing why, was unaware of competing applicants, and recalled submitting only his "CV or Bio." *See* Dkt. 23-3 at 5–7. Those facts are far closer to the Media Defendants' reporting that Adkins did not apply for the job than the illusion of a fulsome hiring process Adkins describes in the Opposition.

**Not Defamatory.** Even if the Court concludes that Statement 1 could be false and unprivileged, it still falls far short of defamation. According to Adkins, the assertion that "Adkins did not earn his position at USADF by competitive selection but was instead corruptly handed the position as a lackey . . . injures Mr. Adkins in his trade and in his community standing." Opp'n at 37. Again, Adkins' argument relies on an embellishment of what the Media Defendants actually reported. They did not state Adkins was "corruptly handed the position as a lackey," *id.*, just that he did not apply for the position. The Court should therefore determine as a matter of law that the Media Defendants' reporting would not "invoke hatred or loathing" for Adkins, lead others to "hold him in disgrace or dishonor," or "subject him to scornful laughter," as a truly defamatory comment would. *See Klayman v. Segal*, 783 A.2d 607, 618 (D.C. 2001).

Even if the Media Defendants had implied that Adkins "is a kind of dilettante, and that he . . . lack[s] seriousness" in his profession, a "newspaper columnist must surely have the right to question the qualifications of" a senior government official. *Guildford Transp. Indus., Inc. v.*

10

*Wilner*, 760 A.2d 580, 602–03 (D.C. 2000). Regardless of whether Adkins had applied for his USADF position, Statement 1 is not defamatory because it did not "disparage [Adkins'] character." *Id.* (citing *Knight v. Blackford*, 3 Mackey (14 D.C.) 177, 182–83 (Sup. Ct. D.C. 1877)).

### 2. The Media Defendants' reporting that Adkins' tailoring bill was sent to USADF (Statement 2) was factual.

Adkins has no defamation claim against the Media Defendants for reporting that Adkins "had a tailor fit him for three custom suits, and sent the bill to the agency" (Dkt. 9-1 at 6) because he cannot satisfy the basic falsity element. As the Media Defendants explained in post-publication correspondence and again in the Motion, "Adkins' 'personal tailor sent the bill for [] Adkins' personal expenses to [] Adkins' taxpayer-funded assistant at her taxpayer-funded email address for her to handle on her taxpayer-funded time." Mot. at 30 (quoting FAC ¶ 78). Adkins does not dispute that this is true; instead, he twists Statement 2 into an allegation that "Adkins embezzled funds from the government for his personal gain[.]" Opp'n at 26.

Adkins argues that the Court should disregard the literal truth of Statement 2 and instead consider "'the publication . . . as a whole, in the sense it would be understood by the readers to whom it was addressed,'" including their "'(1) context, (2) [the] plain or fair and natural meaning of the words used, and (3) [the] average or common mind or ordinary and common acceptance.'" Opp'n at 40 (first quoting *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984), then quoting *Klayman*, 783 A.2d at 614 (brackets in original, ellipsis added)). *Best* and *Klayman* are inapposite; the cited portions relate to whether a publication was *defamatory*, not whether it was *false*. *See Best*, 484 A.2d at 989 (analyzing whether the statements in a "report about the Department of Pharmacy Practice" were defamatory); *Klayman*, 783 A.2d at 617 (analyzing whether a description of an attorney's public relations tactics were defamatory). As the Media Defendants contend that

Statement 2 simply is not false, the three-factor test discussed in *Klayman* does not apply. *See Libre by Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 155 (D.D.C. 2018) ("'[F]alsity and defamatory meaning 'are distinct elements of the tort of defamation and are considered separately.'" (quoting *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 273 (D.D.C. 2017))).

"[T]he threshold determination of falsity [on a Rule 12(b)(6) motion is] whether any reasonable person could find the statement to be false." *Libre by Nexus*, 311 F. Supp. 3d at 156 (citing *Trudeau v. FTC*, 456 F.3d 178, 193–94 (D.C. Cir. 2006)). Adkins cannot contest that his tailor sent the bill to USADF. As Statement 2 is undeniably true, Adkins cannot meet the falsity element, regardless of the article's surrounding context or how some readers understood it.

### 3. The Media Defendants' reporting that Adkins "demanded $1,000-a-night hotels" (Statement 3) was factual.

The deficiency in Statement 3 mirrors the deficiency in Statement 2: Adkins cannot deny the literal truth of the Media Defendants' reporting. In the Motion, the Media Defendants explained that they simply reported that Adkins *demanded* $1,000-a-night hotels, not that he succeeded in purchasing such hotel rooms with government funds. Mot. at 33. Notably, Adkins does not deny that he demanded such rooms, doubling down on his argument that a "plausible reading" of Statement 3 is that Adkins "obtain[ed] luxury hotel rooms on the government's dime, not just request[ed] such rooms." Opp'n at 44. Adkins' continued silence as to whether he did indeed demand $1,000-a-night hotels is very telling, especially when contrasted with his denial in the Opposition that he referred to a USADF employee as the "white b—h," which the Media Defendants reported, and which Adkins did not deny in the FAC. Opp'n at 46 n.2. No reasonable person could conclude that the Media Defendants' reporting that Adkins "demanded $1,000-a-

12

night hotels" is false when he apparently did indeed demand such hotels. *See Libre by Nexus*, 311 F. Supp. 3d at 156. That Adkins failed to obtain such accommodations has no bearing on whether Statement 3 was false.

As with Statement 2, Adkins argues that the Court should consider how a reader might interpret Statement 3, rather than its actual truth or falsity, citing *Best* and *Klayman*. Again, *Best* and *Klayman* provide a framework for analyzing whether a statement is defamatory, not whether it is false. *See Best*, 484 A.2d at 989; *Klayman*, 783 A.2d at 617; *see also Libre by Nexus*, 311 F. Supp. 3d at 155 (explaining that falsity and defamatory meaning are distinct and "considered separately"). Adkins cannot make up for Statement 3's lack of falsity by arguing that readers may reach a conclusion other than what was actually reported.

Finally, Adkins argues that the Media Defendants did not address the "falsehood" that "Mr. Adkins fired Ms. Battle for raising concerns about this travel arrangements." Opp'n at 43–44. Adkins labeled his third claim for relief, "Defamation *Per Se* for False Allegation #3—Violating Federal Travel-Spending Rules." FAC at 56. Adkins described the statement as "conveying[] the false factual assertion that Mr. Adkins embezzled funds from USADF to pay for unauthorized hotel accommodations beyond what is allowed under federal law." FAC ¶ 200. Adkins alleged Statement 3 was defamatory *per se* because it "suggest[ed] he defrauded the government and violated federal travel rules to do so." FAC ¶ 201. Adkins further alleged that Defendant Battle "knew that Mr. Adkins never in fact did, nor intended to, have the federal government pay for travel expenses beyond what was allowed under federal law," without referencing her termination.

FAC ¶ 206. Adkins therefore did not provide the Media Defendants with notice that they were suing over this portion of the statement, and it is not a basis for liability.[1]

### 4. Part of the Media Defendants' reporting about Adkins' discriminatory statements (Statement 4) is shielded by the fair report privilege.

Adkins cannot sue the Media Defendants for their reporting that Adkins stated that he wanted his entire team and all his direct reports to be Black because this statement was in an EEOC affidavit, thus triggering the fair report privilege. *See* Mot. at 36–37. Adkins' attempts to evade the fair report privilege fail.

*First*, Adkins argues that the privilege does not apply because the Media Defendants published Statement 4 with actual malice. As explained in Section III.B, *infra*, Adkins failed to plead actual malice as to each statement.

*Second*, Adkins argues the qualified privilege does not apply because the Media Defendants attributed Statement 4 to something a former employee "told The Daily Wire . . . on condition of anonymity." Opp'n at 47. Adkins misstates the record. While the Media Defendants attributed *other* portions of Statement 4 as Adkins describes, they are very clear to attribute the statement at issue to an affidavit. *See* Dkts. 9-2 at 4 ("Adkins' former assistant, who is black, said in a sworn affidavit that 'On at least three occasions, Mr. Adins told me that he wanted his entire team (to include the General Counsel) to consist only of Black people. He wanted all of his direct reports to be Black."); 9-3 at 15 (same); 9-4 at 3 (same).

---

[1] Even if the Court construes Statement 3 to include the basis for Defendant Battle's termination, the Media Defendants' actual malice arguments regarding Statement 3 apply equally to that statement. *See infra*, Section III.B.2.

*Third*, Adkins argues that Defendant Battle's affidavit does not mention Adkins discriminating against veterans or making racist statements about the USADF board. Opp'n at 48. The portion of Statement 4 that was attributed to the EEOC affidavit is nonetheless privileged.

*Fourth*, Adkins argues that Defendant Battle's "own Motion to Dismiss undermines the contentions that Defendants' statements are attributable to her, let alone to her affidavit." Opp'n at 48. Defendant Battle attached her EEOC affidavit to her motion, and it contains the exact statement the Media Defendants attributed to the EEOC affidavit and contend is privileged. *See* Dkt. 24-7 ¶ 2.

As the Media Defendants (1) accurately quoted Defendant Battle's statement about Adkins' discriminatory statements from her EEOC affidavit; and (2) clearly attributed the statement to the affidavit, that portion of Statement 4 is subject to the fair report privilege. *US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 34 (D.D.C. 2022).

## B. Adkins Failed to Allege Actual Malice for All Four Statements.

Even if the Court concludes that any of the four statements were false, defamatory, and unprivileged, Adkins' defamation claims still fail because Adkins has no facts showing the Media Defendants published the statements with actual malice. Decades of Supreme Court and D.C. Circuit caselaw make clear that actual malice depends on the defendant's subjective belief as to the truth of the statements at issue. Adkins has no facts showing that the Media Defendants did not believe the truth of their reporting, and Adkins' attempt to get around the actual malice standard with largely irrelevant allegations about motive, bias, and journalistic techniques is insufficient.

///

///

### 1. Adkins' burden was to allege facts showing clear and convincing evidence of actual malice.

Adkin tries to evade the clear and convincing evidence standard that public figure plaintiffs must satisfy in alleging (and ultimately proving) actual malice, relying only on an unpublished D.C. Circuit opinion that did not expressly reject the clear and convincing standard at the pleading stage. *See* Opp'n at 32 (citing *Byd Co. v. All. for Am. Mfg.*, No. 21-7099, 2022 WL 1463866, at *1 (D.C. Cir. May 10, 2022)). Courts in this District routinely apply the clear and convincing evidence standard for actual malice at the pleading stage. *See, e.g.*, *Couch v. Verizon Commc'ns, Inc.*, Civil Case No. 20-2151 (RJL), 2021 WL 4476698, at *3 (D.D.C. Sept. 30, 2021) ("To plead actual malice so as to survive a motion to dismiss, the plaintiff must show, by clear and convincing evidence. . . ." (citing *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218 (D.D.C. 2012))); *Parisi*, 845 F. Supp. 2d at 218 (applying the clear and convincing evidence standard on a motion to dismiss); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 93 (D.D.C. 2018) (dismissing a defamation claim because the plaintiff's "allegations do not provide clear and convincing evidence of actual malice). The Court must therefore apply the clear and convincing evidence standard to Adkins' actual malice allegations.

### 2. Adkins has no colorable actual malice arguments specific to the four statements.

Adkins' actual malice argument relies largely on generalized attacks on the Media Defendants rather than their subjective beliefs as to the truth of their reporting. Even where Adkins tries to make actual malice showings specific to the four statements, he comes nowhere close.

**Statement 1.** Adkins argues that the Media Defendants' review of Adkins' EEOC deposition transcript shows they knew that "Adkins applied for the job at USADF." Opp'n at 33.

The opposite is true; Adkins' description of his scant and unorthodox hiring process makes it substantially true that he did not apply for the position. *See supra*, Section III.A.1. Even if the Court disagrees with the Media Defendants' interpretation of Adkins' deposition testimony, nothing in the FAC shows that the Media Defendants did not actually believe that Statement 1 was an honest summation of what Adkins had said in his deposition. *See Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 594 (D.C. Cir. 2016) ("An honest misinterpretation does not amount to actual malice even if the publisher was negligent in failing to read the document carefully.") (citations omitted).

**Statement 2.** As with Statement 1, the Media Defendants' falsity defense is interwoven with their actual malice defense. The Media Defendants could not have published Statement 2 with actual malice because Adkins' tailor did indeed send the bill for Adkins' three custom suits to USADF. *See supra*, Section III.A.1. Adkins' only response to this argument is to dispute the "plain meaning" of Statement 2. Opp'n at 43. But once again, Adkins has no allegations showing that the Media Defendants "harbored serious doubts as to the truth" of Statement 2. *See Byrne*, 600 F. Supp. 3d at 33 (citing *Jankovic*, 822 F.3d at 589).

**Statement 3.** Yet again, Adkins assumes that the "dispute about the meaning of the hotel statement" will resolve in his favor but fails to offer any allegations showing that the Media Defendants intended to convey any false statement about Adkins. *See* Opp'n at 44–45. In actuality, the Media Defendants reported a precise statement about Adkins—that he "demanded" expensive hotel rooms. Adkins is unable to dispute that this statement is false, much less allege that the Media Defendants themselves believed this statement was false when they published it.

**Statement 4.** Adkins first argues that the Media Defendants published their reporting about Adkins' racist and discriminatory statements[2] with actual malice because "non-Black employees and veterans were hired and promoted at USADF." Opp'n at 45. That fact has no bearing on the substance of Statement 4. Two things can be true: (1) USADF hired and promoted non-Black people and veterans; and (2) Adkins nonetheless made racist and discriminatory comments. At a minimum, Adkins does not and cannot allege that the Media Defendants did not believe that both of these facts could be true, which is what matters for the actual malice analysis. Even if *Adkins* believes the presence of non-Black employees is exculpatory, Adkins has no facts showing that the *Media Defendants* believed this fact to be exculpatory. And it is the Media Defendants' subjective belief as to the truth of their reporting that matters.

*Second*, Adkins argues that Statement 4 was "inherently improbable," in particular Adkins' reference to the USADF board as "them white motherf—ers." Opp'n at 45. Adkins has no answer to the Media Defendants' argument in the Motion that there is nothing inherently improbable about a public official making racist and discriminatory remarks, particularly given the caselaw involving precisely that kind of conduct. *See* Mot. at 35 (citing *Blackmon-Malloy v. United States Capitol Police Bd.*, No. CV 01-2221 (EGS), 2024 WL 4298853, at *2 (D.D.C. Sept. 26, 2024)). The Media Defendants had further pointed out that Adkins did not dispute, much less sue over, their reporting that he referred to a USADF employee as "the white b—h." *Id.* While Adkins protests that this argument is "insulting," Opp'n at 46 n.2, it is nonetheless true that (1) the Media

---

[2] Adkins argues that Statement 4 went beyond Adkins' racist and discriminatory statements and included a discussion of his hiring practices. Opp'n at 46. But the Media Defendants reported that *USADF*, not Adkins, "refused to hire white people," in an article that discussed USADF under Adkins' predecessor's leadership in addition to Adkins'. Dkt. 9-4 at 2. And the statement that Adkins was "adamant in only hiring African Americans" refers to Adkins' preferences regarding hiring, not what the agency actually did under his watch.

Defendants reported that Adkins had used this offensive and derogatory term to refer to an employee; (2) nothing in the FAC suggests Adkins did not use this term, much less that the Media Defendants knew he did not use this term; and (3) the Media Defendants' belief that Adkins had referred to an employee as "the white b—h" makes it all the more plausible that he referred to the board as "them white motherf—ers."

*Third*, Adkins claims that the Media Defendants "knew Ms. Battle's EEOC affidavit contained falsehoods and made no reference to veterans or the most incendiary allegations of discriminatory and racist conduct." Opp'n at 45. The fact that Ms. Battle's affidavit did not contain each of the component parts of Statement 4 is immaterial; nothing in the affidavit indicates it contains the full universe of racist and discriminatory comments Adkins made at work. *See* Dkt. 24-7. It is likewise immaterial that other USADF employees had contradictory accounts of Adkins' tenure at USADF. Opp'n at 45. All that matters for actual malice is the Media Defendants' subjective belief regarding the truth of Statement 4, and nothing in the FAC or Opposition indicates, much less with clear and convincing evidence, that the Media Defendants had serious doubts about Defendant Battle's account of what took place at USADF.

### 3. The Media Defendants' reliance on a source shows a lack of actual malice.

As explained in the Motion, the Media Defendants' attribution of Statements 2 and 4 to a source demonstrates a lack of actual malice. Mot. at 31–32, 35. Adkins argues that reliance on a source whom the reporter doubts or whom the reporter understands to be biased or unreliable may be circumstantial evidence of actual malice. Opp'n at 43. But Adkins offers no factual allegations showing the Media Defendants actually doubted their source or believed their source was unreliable. Instead, Adkins points to various reasons *he* believes Defendant Battle lacks credibility,

but he fails to show any subjective doubt on the Media Defendants' part as to the specific information they attributed to their source in Statements 2 and 4. *See* Opp'n at 43.

### 4. Adkins' generalized actual malice allegations do not add up to a clear and convincing showing of actual malice.

Unable to show that the Media Defendants disbelieved or even doubted the truth of Statements 1–4, Adkins resorts to stringing together various attacks on the Media Defendants and their reporting methods. None of these allegations are clear and convincing evidence of actual malice, individually or in the aggregate.

**Not Seeking Comment from Adkins.** Adkins argues that the Media Defendants published each statement with actual malice because Rosiak did not seek comment from Adkins on those specific subjects prior to publishing. Opp'n at 33, 42, 44, 45. As explained in the Motion, a "defendant only has a "duty to corroborate the defamatory allegation" when the journalist "'has reason to doubt the veracity of its source.'" Mot. at 26 (quoting *Jankovic*, 822 F.3d at 590). Without allegations showing actual doubt on the Media Defendants' part, their decision not to seek comment from Adkins does not constitute "purposeful avoidance of the truth." *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 692 (1989).

**The Media Defendants' Motivations.** Adkins argues that the Media Defendants' alleged belief that publishing each statement would "generate attention and revenue from their intended audience" is evidence of actual malice for each statement. Opp'n at 33, 42, 44–46. Adkins further argues that the Media Defendants' supposed "ill will and inherent bias against Mr. Adkins" and "preconceived agenda" (Statement 4 only) shows actual malice as to each statement. Opp'n at 33, 42, 44–46. "It is settled that ill will toward the plaintiff or bad motives are not elements of actual malice and that such evidence is insufficient by itself to support a finding of actual malice."

20

*Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) ("*Tavoulareas II*") (citing *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 281–82 (1974)). While Adkins cites *Harte-Hanks Communications*, that case is consistent with *Tavoulareas II. See Harte-Hanks Commc'ns*, 491 U.S. at 666 ("It is also worth emphasizing that the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." (citations omitted)); *see also id.* at n. 7 ("The phrase 'actual malice' is unfortunately confusing in that it has nothing to do with bad motive or ill will." (citations omitted)). In the face of clear Supreme Court and D.C. Circuit caselaw, contrary authority from the Fifth and Ninth Circuits is irrelevant. *Contra* Opp'n at 35. Adkins cannot allege actual malice based on the Media Defendants' reasons for reporting on Adkins; it is their subjective belief regarding the truth of Statements 1–4 that matters.

**Omitting Facts Favorable to Adkins.** Adkins argues that the Media Defendants' decision not to include facts favorable to Adkins indicates actual malice as to Statements 1, 3, and 4. Opp'n at 33, 44–45. In the Motion, the Media Defendants explained that a plaintiff cannot establish actual malice "by showing that a publisher misinterpreted the source material or omitted details favorable to the plaintiff. . . . A publisher's decision to omit details favorable to the plaintiff does not, itself, show actual malice." Mot. at 26 (quoting *Talley v. Time, Inc.*, 923 F.3d 878, 896 (10th Cir. 2019)). Adkins does not address *Talley*, much less provide the Court with any reason not to follow it. The Court should follow the Tenth Circuit's well-reasoned opinion rather than Adkins' cherry-picked treatises that say otherwise. *Contra* Opp'n at 35.

**Refusal to Correct or Retract and Publication of the December 29 Article.** Adkins argues that the Media Defendants' refusal to correct or retract Statements 1 and 3 following post-publication correspondence is evidence of actual malice. Opp'n at 33, 44. Defendants cite *Tavoulareas v. Piro*, 763 F.2d 1472, 1477 (D.C. Cir. 1985) (MacKinnon, J., concurring)

21

("*Tavoulareas I*") for the proposition that failure to retract is evidence of actual malice. Judge MacKinnon's concurrence (joined by then-Circuit Judge Scalia) also recognized that a failure to retract "may sometimes demonstrate the *lack* of malice—as showing continued genuine belief in the published account." *Tavoulareas I*, 763 F.2d at 1477. The *Tavoulareas I* court concluded the failure to retract was relevant because there was "overwhelming evidence showing that the [*Washington*] *Post* article was wrong." *Id.* The opposite is true here, as Adkins cannot even allege, much less prove, the falsity of most of the statements at issue. The Media Defendants' refusal to retract here shows a lack of actual malice as they continue to stand by their reporting.

Adkins further argues that the republication of the various statements in the December 29, 2025 article shows actual malice as to each statement. Opp'n at 33–34, 44, 46. This argument fails for the same reason as Adkins' failure to retract argument. The record makes clear that the Media Defendants stand by their reporting, as Adkins' defamation claims rely on his interpretation of what the Media Defendants published (Statements 1–3) or his denial of other witnesses' accounts of his actions (Statement 4). The Media Defendants' decision to republish the statements at issue (as well as the vast majority of their reporting about Adkins, which, while highly negative, is not at issue in this case) shows that the Media Defendants believed their reporting to be true, not that they believed it to be false.

*    *    *    *

Adkins cannot satisfy the high bar of alleging actual malice by clear and convincing evidence by aggregating the various irrelevant factors above. Adkins cites several cases in which courts considered aggregate evidence of actual malice, but the distinctions between those cases and Adkins' allegations in the FAC only highlight the weakness of the latter. In *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016), the court determined that *proof* of "failure

22

to adequately investigate, a departure from journalistic standards, [and] ill will or intent to injure" was enough to create a genuine issue of material fact, a conclusion no court in this Circuit has reached. The court emphasized, however, that the reporter's "own reporting notes" showed that she had obvious reasons to doubt her sources' veracity and had serious doubts as to the truth of her reporting. *Eramo*, 209 F. Supp. 3d at 872. Regardless of how the court got there, its conclusion was nonetheless tied to the subjective inquiry the actual malice standard requires. None of the facts Adkins alleged speak to any subjective doubt on the part of the Media Defendants.

Adkins' citation to Justice Harlan's plurality opinion in *Curtis Publishing Co. v. Butts* is unavailing because Justice Harlan did not apply the current standard for actual malice. 388 U.S. 130, 163 (1967) (Warren, C.J., concurring) ("Justice HARLAN'S opinion departs from the standard of *New York Times* [*Co. v. Sullivan*, 376 U.S. 254 (1964)] and substitutes in cases involving 'public figures[,]' a standard that is based on 'highly unreasonable conduct' and is phrased in terms of 'extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers[.]'" (italics added)); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335 (explaining that a majority of the Court agreed with Chief Justice Warren that the actual malice test in *New York Times* should govern defamation cases involving public figures, rather than the "highly unreasonable conduct" and "extreme departure from the standards of investigation" test Justice Harlan used in *Curtis Publishing Co.*).

Finally, the facts in *Harte-Hanks Communications* are radically different from Adkins' allegations. While Adkins maintains the Supreme Court "upheld another verdict finding actual malice based on nothing more than (1) the defendants' failure to interview a corroborating witness and (2) the defendants' failure to review the materials in their files that refuted their story," Opp'n at 34, the facts of the case tell another story. The Court explained that the "charges had been denied

23

not only by [the plaintiff], but also by five other witnesses before the story published." *Harte-Hanks Commc'ns*, 491 U.S. at 691. The Court concluded that the "hesitant, inaudible, and sometimes unresponsive and improbable tone of [the source's] answers to various leading questions raise obvious doubts about her veracity." *Id.* Moreover, the Court deemed the publisher's failure to consider contrary evidence a "purposeful avoidance of truth" rather than a mere "failure to investigate" because of the jury's rejection of the publisher's explanation for doing so, leading the Court to conclude that it was "likely that the newspaper's inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the source]'s charges." *Id.* at 692. Dismissal of Adkins' FAC would therefore not conflict with *Harte-Hanks Communications* as Adkins does not and cannot allege similar facts regarding the Media Defendants.

As a former public official, Adkins had the heavy burden of alleging facts that show by clear and convincing evidence that the Media Defendants knowingly published falsehoods about him or, at a minimum, had serious doubts about the veracity of Statements 1–4. Adkins has no facts showing any subjective knowledge of falsity or doubt on the part of the Media Defendants, and his remaining allegations about motivations and journalistic practices do not amount to actual malice under any controlling authority.

## C.  Dismissal Should Be Without Leave to Amend.

The Media Defendants identified numerous defects in all four of Adkins' defamation claims. Yet Adkins never offers any additional facts that may cure those deficiencies, stating only that he can amend the complaint to allege that "The Daily Wire has paid subscribers and that the articles were disseminated here[.]" Opp'n at 26 n.1. Any amendment of the complaint would thus be futile; if Adkins could cure the deficiencies identified in the Motion through amendment, he

would have said so. "Where a plaintiff 'could not allege additional facts that would cure the deficiencies in her complaint,' a district court acts within its discretion in denying leave to amend the complaint as futile." *United States v. All Assets Held at Bank Julius*, 229 F. Supp. 3d 62, 70 (D.D.C. 2017), *am. on reconsideration sub nom. United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 268 F. Supp. 3d 135 (D.D.C. 2017) (quoting *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012)). If the Court reaches the Media Defendants' Rule 12(b)(6) arguments, it should dismiss the FAC without leave to amend.

## IV.   CONCLUSION

Adkins brought four deficient defamation claims against the Media Defendants in the wrong district. The Court should either dismiss the FAC without prejudice for improper venue or without leave to amend for failure to state a claim.

Dated: May 14, 2026                                    Respectfully submitted,


                                                       */s/ Jesse D. Franklin-Murdock*
                                                       Karin M. Sweigart
                                                       (Bar #CA00145)
                                                       Jesse D. Franklin-Murdock
                                                       (Bar #CA00147)
                                                       **SWEIGART MURDOCK, LLP**
                                                       1160 Battery Street, Suite 100
                                                       San Francisco, California 94111
                                                       (415) 873-0123
                                                       Karin.Sweigart@sm-llp.com
                                                       Jesse@sm-llp.com

                                                       *Counsel for Defendants*
                                                       *The Daily Wire, LLC & Luke Rosiak*

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing documents were duly served on all counsel of record via the Court's CM/ECF platform on the date listed below.

Dated: May 14, 2026                           Respectfully submitted,


                                              */s/ Jesse D. Franklin-Murdock*
                                              Karin M. Sweigart
                                              (Bar #CA00145)
                                              Jesse D. Franklin-Murdock
                                              (Bar #CA00147)
                                              **SWEIGART MURDOCK, LLP**
                                              1160 Battery Street, Suite 100
                                              San Francisco, California 94111
                                              (415) 873-0123
                                              Karin.Sweigart@sm-llp.com
                                              Jesse@sm-llp.com

                                              *Counsel for Defendants*
                                              *The Daily Wire, LLC & Luke Rosiak*

26